IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2850 |
| | § | |
| CYPRESS-FAIRBANKS INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Roe, brings this action against defendant, the Cypress-Fairbanks Independent School District ("CFISD"), for violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681, and for violation of civil rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. §§ 1983 and 1988. Plaintiff seeks compensatory and punitive damages, interest, costs of court, attorney's fees, statutory/civil penalties, and such other relief available as the court deems appropriate. Pending before the court is Defendant's Motion to Dismiss Plaintiff's Section 1983 Claim ("Defendant's M/D") (Docket Entry No. 9), Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Section 1983 Claim in which plaintiff requests leave to amend her complaint ("Plaintiff's Opposition") (Docket Entry No. 11), and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Section 1983 Claim ("Defendant's Reply") (Docket Entry No. 12). For the reasons stated below, defendant's motion to dismiss will be granted, and plaintiff's request for leave to amend will be denied.

## I.  <u>Standard of Review</u>

Defendant CFISD seeks dismissal of the claim that plaintiff has asserted under 42 U.S.C. § 1983 for violation of rights protected by the Equal Protection Clause of the Fourteenth Amendment for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff's pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied</u>, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Id.</u>  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 127 S. Ct. at

1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). Moreover, courts do not accept as true legal conclusions. "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1950.

## II.  **Plaintiff's Factual Allegations**

Plaintiff alleges that on or about March 10, 2014, when she was 14 years old and enrolled as a student at Cypress Creek High School, her boyfriend, who was another student, sexually assaulted her in a stairwell at the school.[1]  Plaintiff alleges that when she sought treatment at a hospital, the hospital contacted the CFISD Police Department ("CFPD"), because the sexual assault occurred on a CFISD campus, and that the next day her mother reported the assault to Cypress Creek Assistant Principal Carol Gibson.[2] Plaintiff alleges the injuries caused by the assault required two

---

[1]Plaintiff's Original Complaint and Jury Demand ("Plaintiff's Complaint"), Docket Entry No. 1, pp. 9-11 ¶¶ 39-47.  All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Id. 11 ¶ 50.

-3-

surgeries, weeks of wound care, permanent scarring and disfigurement, and long-term effects to her reproductive health that are still unknown.[3]

Plaintiff alleges that she and the perpetrator began a tumultuous "boyfriend and girlfriend" relationship in 2011 when they were both in eighth grade, that the perpetrator admitted the March 2014 assault to Cypress Creek administrators, but that defendant took no action against the perpetrator.[4] Plaintiff alleges upon information and belief that the assault was not recorded or reported as required by the Texas Education Agency ("TEA") as part of CFISD's submission of Public Education Information Management System ("PEIMS") data nor was it included in CFISD's response to the United States Department of Education's Civil Rights Data Collection.[5] Plaintiff alleges that apart from briefly questioning her during her initial hospitalization, the CFPD did not investigate the assault,[6] that when she returned to school CFISD took no measures to protect her from harassment and retaliation, and that she missed days of instruction, failed multiple classes in the spring semester of 2014, and attended summer school to catch up.[7]

---

[3]Id. at 11-12 ¶¶ 51-53.

[4]Id. at 9 ¶¶ 36-37, and 12 ¶ 57.

[5]Id. at 12 ¶¶ 58-59.

[6]Id. ¶ 60.

[7]Id. at 13 ¶ 61.

Plaintiff alleges that when she returned to Cypress Creek for the 2014-15 school year, the perpetrator remained at the school, and repeatedly made threatening gestures to her and accused her of trying to have him arrested.[8] Plaintiff alleges that the perpetrator's proxies bullied her, both in person at school and online through social media.[9] Plaintiff alleges that she was also harassed by a teacher, and that she failed to make two sport teams on which she had played the previous year.[10] Plaintiff alleges that both she and her mother reported the harassment and retaliation by both students and the teacher to Cypress Creek administrators, but that the defendant failed to take any action to investigate her complaints, to stop the harassment or to remedy its affects.[11] Plaintiff alleges that the harassment included social media posts encouraging her to kill herself, and that on June 30, 2015, she intentionally overdosed on Benadryl while being harassed by fellow students.[12]

Plaintiff alleges the due to the hostile environment at Cypress Creek, she withdrew from CFISD and enrolled in school in Indiana, where her father lived, for the 2015-16 school year.[13]

---

[8] Id. ¶ 62.

[9] Id. ¶ 64.

[10] Id. ¶ 65.

[11] Id. at 13-14 ¶ 66.

[12] Id. at 14 ¶ 67.

[13] Id. ¶ 68.

However, wanting to return to Houston to live with her grandparents, her mother, and her younger siblings, plaintiff attempted to return to Cypress Creek in March of 2016 during the spring of her junior year.[14] Plaintiff alleges that because the perpetrator and other students who had harassed her were still students at Cypress Creek, after only a few weeks she was overwhelmed and unable to continue attending school. Plaintiff alleges that when her mother met with school personnel to discuss her concerns about the plaintiff, school personnel made no effort to investigate, to address her concerns, or provide any support services to her. Instead, school personnel encouraged plaintiff's mother to withdraw her from school and to designate on the withdrawal form that plaintiff going to be home schooled.[15]

### III. **Analysis**

Plaintiff asserts that defendant is liable for violation of Title IX of the Education Act of 1972,[16] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution made actionable by 42 U.S.C. § 1983.[17] Defendant

---

[14]Id. ¶ 69.

[15]Id. ¶ 70.

[16]Id. at 16-18 ¶¶ 81-92.

[17]Id. at 18-21 ¶¶ 93-107.

moves to dismiss Plaintiff's Section 1983/Equal Protection claim because (i) Plaintiff's factually unsupported conclusions that the [defendant] violated her constitutional rights do no satisfy the standards for governmental liability set forth in *Monell v. New York City Department of Social Services*, [98 S. Ct. 2018,] (1978); and (ii) Plaintiff pleads no facts suggesting that the [defendant] treated her differently than similarly situated students because of her gender.[18]

Defendant also argues that plaintiff's "claim for punitive damages is . . . barred as a matter of law."[19] Plaintiff responds that she has alleged sufficient facts to support a plausible claim for violation of her right to equal protection,[20] and that she makes no claim for punitive damages.[21] Plaintiff contends that her complaint also alleges a substantive due process claim under the state-created danger theory, and seeks leave to file an amended complaint should the court disagree.[22]

## A. Applicable Law

To state a claim under § 1983, plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. <u>Moore v. Willis Independent School District</u>, 233 F.3d 871, 874 (5th Cir.

---

[18]Defendant's M/D, Docket Entry No. 9, p. 7.

[19]<u>Id.</u>

[20]Plaintiff's Opposition, Docket Entry No. 11, pp. 2, 15-27.

[21]<u>Id.</u> at 31 (asserting that "[t]he reference to punitive damages in the closing paragraph and prayer of her Complaint was inadvertent").

[22]<u>Id.</u> at 27-31.

2000). In <u>Monell</u> the Supreme Court held that municipalities and other local government entities such as school districts are "persons" subject to suit under 42 U.S.C. § 1983, but that such entities cannot he held liable on a <u>respondeat superior</u> basis, <u>i.e.</u>, a local government cannot be held liable simply because one of its employees violated a person's federal rights. 98 S. Ct. at 2021-22. For a local governmental entity to be held liable under § 1983, the entity itself must cause the violation through its policies, customs, or practices. <u>Id.</u> at 2037-38 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Absent such an official policy, custom, or practice, a municipality may only be held liable if the discriminatory practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Adickes v. S.H. Kress & Co.</u>, 90 S. Ct. 1598, 1614 (1970).

**B.    Application of the Law to the Alleged Facts**

1.    <u>Plaintiff Fails to Allege Facts that Support a Plausible Claim for Violation of a Constitutional Right</u>

Plaintiff argues that her complaint alleges sufficient facts to support plausible claims for violation of her rights to equal protection and substantive due process.

-8-

(a) Plaintiff Fails to Allege Sufficient Facts to
Support a Plausible Equal Protection Claim

Plaintiff's Second Cause of Action asserts a claim for violation the Equal Protection Clause of the Fourteenth Amendment.[23] The Equal Protection Clause provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." United States Constitution Amend. XIV. The Equal Protection Clause requires that similarly situated persons be treated alike. City of Cleburne, Texas v. Cleburne Living Center, Inc., 105 S. Ct. 3249, 3254 (1985). To state a claim under the Equal Protection Clause and § 1983, a plaintiff "must allege . . . that [s]he received treatment different from that received by other similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." Priester v. Lowndes County, 354 F.3d 414, 424 (5th Cir.), cert. denied, 125 S. Ct. 153 (2004) (quoting Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam)). "A discriminatory purpose 'implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'" Id. (quoting Taylor, 257 F.3d at 473 (quoting Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988)). "[P]urposeful discrimination requires more than intent as volition or intent as

---

[23]Plaintiff's Complaint, Docket Entry No. 1, pp. 18-21 ¶¶ 93-107.

-9-

awareness of consequences. . . . It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." Iqbal, 129 S. Ct. at 1948 (citations and internal quotations omitted). "[A]n equal protection claim depends on either identifying a class, Washington v. Davis, [] 96 S. Ct. 2040, 2047 [] (1976), or showing that the aggrieved party is a 'class of one,' Village of Willowbrook v. Olech, [] 120 S. Ct. 1073, 1074 [] (2000) [per curiam]." Gil Ramirez Group, L.L.C. v. Houston Independent School Group, 786 F.3d 400, 419 (5th Cir. 2015). An equal protection claim based on a "class of one" may succeed "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 120 S. Ct. at 1074. But "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action — even if irrational — does not deny them equal protection of the laws." Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir.), cert. denied, 118 S. Ct. 559 (1997) (quoting Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988)). "Thus, when [courts] are confronted with a state action which does not so classify or distinguish, we need not consider whether there is a 'rational basis' for that action because such state actions are not subject to Equal Protection scrutiny." Id.

Defendant argues that it is entitled to dismissal of plaintiffs' § 1983 equal protection claim because "Plaintiff pleads no facts suggesting that [it] treated her differently than similarly situated students because of her gender."[24] Defendant argues that "several of Plaintiff's allegations complain that the District allegedly failed to act with respect to *all* students — not just female students,"[25] and "that Plaintiff's own Complaint suggests that the District was *not* actually motivated by Plaintiff's gender, but was instead motivated, at least in part, by a desire to avoid reporting certain information to the Texas Education Agency."[26]

---

[24]Defendant's M/D, Docket Entry No. 9, p. 7. See also id. at 17-22.

[25]Id. at 21 (citing Plaintiff's Complaint, Docket Entry No. 1, pp. 20-21 ¶¶ 103-105 ("**103.** CFISD[] routinely failed to provide victims of sexual assault and dating violence, including Roe, with appropriate resources and failed to inform victims, including Roe, of options for protective orders, school-based protective orders or other measures reasonably available to ensure their safety. . . **105.** CFISD's unlawful policies, practices, and/or customs included the failure to educate CFISD students, including but not limited to Roe and Perpetrator, on the dangers and consequences of dating violence, sexual harassment, assault and retaliatory conduct.")).

[26]Id. at 21 (citing Plaintiff's Complaint, Docket Entry No. 1, pp. 14-15 ¶ 71 ("Roe now believes that Cypress Creek personnel were acting in the best interest of the campus and the District with deliberate indifference to the continuing effects of the on-campus sexual assault and retaliation she was suffering when they facilitated her withdrawal. Roe believes that the action was driven out of concern that she would likely perform poorly on upcoming state assessments and was taken to avoid having to report her to the Texas Education Agency as a drop out — both of which would have reflected negatively on Cypress Creek High School and
(continued...)

Citing Shipp v. McMahon, 234 F.3d 907, 914 (5th Cir. 2000), overruled on other grounds, McClendon v. City of Columbia, Mississippi, 305 F.3d 314 (5th Cir. 2002) (en banc) (per curiam), cert. denied, 123 S. Ct. 1355 (2003), and Beltran v. City of ElPaso, 367 F.3d 299, 304-05 (5th Cir. 2004), plaintiff responds that defendant's argument ignores circuit precedent concerning the availability of a claim under the Equal Protection Clause for intentionally discriminatory policies, practices and customs of law enforcement with regard to domestic assault cases.[27] Asserting that Alice L. v. Eanes Independent School District, No. A-06-CA-944-SS, 2007 WL 9710282 (W.D. Tex. March 15, 2007), provides better guidance than the out-of circuit cases on which defendant relies, plaintiff argues that she "alleges that she was injured by CFISD's policy, custom and practice of failing to protect female victims of dating violence and sexual assault."[28]

In Shipp, a woman sued a county sheriff and deputy sheriffs alleging equal protection violations based on law enforcement's failure to protect her from a brutal attack by her husband. The police knew of the husband's propensity for violent behavior and that he had threatened his wife. One of the defendants was the

_____

[26](...continued)
the District.")).

[27]Plaintiff's Opposition, Docket Entry No. 11, pp. 22-27.

[28]Id. at 25 (citing Plaintiff's Complaint, Docket Entry No. 1, pp. 12-14 ¶¶ 55-58, 60, 62-66, and pp. 20-21 ¶¶ 96-98, 101-104).

dispatcher who took the phone call reporting that the husband had tracked the plaintiff down and dragged her away. The dispatcher was the husband's mother. She hung up the telephone without inquiring into the particulars of the incident and took no action other than advising one other deputy. By the time law enforcement found the couple, the plaintiff had been raped and shot. Shipp, 234 F.3d at 909-11.

The defendants filed a motion to dismiss arguing that they were entitled to qualified immunity because the plaintiff failed to plead that their actions violated clearly established law. Id. at 911. Although the Fifth Circuit upheld the district court's dismissal of the plaintiff's complaint based on qualified immunity, the Fifth Circuit recognized that certain intentionally discriminatory policies, practices, and customs of law enforcement with regard to domestic assault and abuse cases may violate the Equal Protection Clause. 234 F.3d at 914 (applying the principle announced in DeShaney v. Winnebago County Department of Social Services, 109 S. Ct. 998, 1004 n. 3 (1989), that "a State may not . . . selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause"). The Fifth Circuit specifically approved the approach articulated in Watson v. City of Kansas City, Kansas, 857 F.2d 690, 694 (10th Cir. 1988), stating that

> to sustain a gender-based Equal Protection claim based on
> law enforcement policies, practices, and customs toward

-13-

> domestic assault and abuse cases, a plaintiff must show:
> (1) the existence of a policy, practice, or custom of law
> enforcement to provide less protection to victims of
> domestic assault than to victims of other assaults;
> (2) that discrimination against women was a motivating
> factor; and (3) that the plaintiff was injured by the
> policy, custom, or practice.

Shipp, 234 F.3d at 914.

In adopting the Watson test, the Shipp court recognized that the plaintiff's allegations that domestic violence victims were treated differently than other crime victims was a route to proving gender-based discrimination because a disproportionate amount of domestic violence victims are women and because the thrust of the argument was that domestic violence victims were treated differently because they are women. Id. at 913. However, since the Fifth Circuit had not previously adopted the Watson approach, the Shipp court held that the defendants were entitled to the defense of qualified immunity because the law it announced was not clearly established when the acts at issue occurred. Id. at 915. In Beltran, 367 F.3d at 304-05, the Fifth Circuit reiterated that allegations that victims of domestic violence were treated differently than other crime victims is a route to proving gender-based discrimination, but also reiterated that "a plaintiff must show that discrimination against women is the 'motivating factor' behind governmental policies that are alleged to be improper." Id. at 305.

Plaintiff argues that her "complaint provides identifies [sic] multiple examples of illegitimate distinctions CFISD made when addressing dating violence and sexual assault committed by male students, both generally and specifically with regard to her own complaints."[29]   But missing from plaintiff's pleadings are any allegations that CFISD treated victims of domestic violence differently than it treated victims of non-domestic violence, or that females were treated differently than males under similar circumstances.   The lack of gender-based allegations in the plaintiff's complaint distinguishes the allegations at issue in this case from those at issue in <u>Alice L.</u>, a case that — as here — involved a student-on-student sexual assault.   In <u>Alice L.</u> the court denied the defendants' motion to dismiss the plaintiffs' equal protection claims because the complaint contained the following gender-based allegations:

> Here, Plaintiff alleges Dusek selectively denied the school district's protective services to R.L. in violation of the Equal Protection Clause by intentionally treating allegations of abuse by a female perpetrator as less serious than allegations of abuse by a male perpetrator.   Plaintiff alleges discrimination against women was a motivating factor in that Dusek thought a female perpetrator was inherently less dangerous than a male perpetrator.

2007 WL 9710282, at *5.   The closest that plaintiff comes to alleging gender-based discrimination is her allegation that "CFISD had a custom, policy and practice of failing to properly record,

---

[29]<u>Id.</u> at 27.

process, and investigate reports of sexual assault and dating violence against female students based on gender and gender-stereotypes."[30] However, missing from plaintiff's complaint are any allegations of fact that permit the court to draw the reasonable inference that CFISD failed to investigate her assault or subsequent harassment due to discriminatory animus for her gender. Accordingly, plaintiff has failed to state a facially plausible claim for violation of her right to equal protection.

### (b)   Plaintiff's Fails to Assert a Cause of Action for Violation of the Right to Due Process

Plaintiff's Complaint asserts two causes of action: (1) for violation of Title IX of the Education Act of 1972;[31] and (2) for violation of the Equal Protection Clause of the Fourteenth Amendment.[32] Plaintiff's Complaint does not contain a cause of action for violation of the right to due process.[33] Nevertheless, citing ¶¶ 9-11, 25-27, 31-32, 42, 56-57, 60, 62-63, 66-67, and 102-105 of her Complaint, plaintiff argues that she has raised "a viable substantive due process claim based on a theory of state-

---

[30]Plaintiff's Complaint, Docket Entry No. 1, p. 19 ¶ 98.

[31]Id. at 16-18 ¶¶ 81-92.

[32]Id. at 18-21 ¶¶ 93-107.

[33]Plaintiff's Opposition, Docket Entry No. 11, p. 27 (recognizing that this claim is "not set forth separately or identified specifically under the heading of 'Fourteenth Amendment'" in her Complaint).

created danger."[34] Citing <u>inter alia</u> <u>Doe v. Covington County School</u> <u>District</u>, 675 F.3d 849, 865 (5th Cir. 2012) (en banc), and <u>Doe v.</u> <u>Ennis Independent School District</u>, No. 3:05-CV-1999-R(BH), 2007 WL 273550 (N.D. Tex. January 31, 2007), plaintiff argues that because the Fifth Circuit has repeatedly declined to expressly adopt or reject the state-created danger theory, district courts should hold open the viability of the theory and "consider whether facts as pled or proven were sufficient to support a finding of state-created danger."[35] <u>See</u> <u>Kemp v. City of Houston</u>, No. Civ. A. H-10-3011, 2013 WL 4459049, *5 (S.D. Tex. August 16, 2013) (Miller, J.) (recognizing that "it is appropriate for district courts to entertain the theory even though the Fifth Circuit has not adopted it . . . [because] . . . the Fifth Circuit has not indicted that it would be unwilling to adopt the theory in the appropriate case").

Defendant has filed a reply "object[ing] to Plaintiff's attempt to amend her pleadings to add a substantive due process 'state-created danger' theory to this lawsuit, by claiming that [defendant] somehow 'overlook[ed] significant portions of Roe's Complaint."[36] Defendant asserts that it "did not 'overlook' the state-created danger claim in Plaintiff's Complaint; it simply is

---

[34]<u>Id.</u>

[35]<u>Id.</u> at 29.

[36]Defendant's Reply, Docket Entry No. 12, p. 10 (quoting Plaintiff's Opposition, Docket Entry No. 11, p. 27).

not there."[37]  Defendant argues that "[r]aising a new, unpled claim
in response to a motion to dismiss is an improper method for
amending pleadings,"[38] and that  "[b]ecause the Fifth Circuit has
repeatedly disavowed any adoption of the state-created danger
theory, [defendant] would request that the Court require the
Plaintiff more formally move to amend her pleadings, so the
viability and application of such a claim can be more properly
briefed."[39]

The Fifth Circuit has not only declined to adopt a state-
created danger theory numerous times, but has also expressly stated
in an <u>en banc</u> opinion that it has not adopted the theory.
<u>Covington County</u>, 675 F.3d at 865 (discussing previous cases that
declined to adopt the theory).  In <u>Covington County</u>, however, the
Fifth Circuit noted that it declined to adopt the theory because
the allegations in that case did not support the theory.  <u>Id.</u>
Review of prior cases in which the Fifth Circuit has discussed the
state-created danger theory leads the court to conclude that
although the Fifth Circuit has not yet found a case in which it
believed the evidence (as opposed to the pleadings) supported a
state-created danger theory of recovery, the Fifth Circuit has
nevertheless indicated that it would be willing to adopt the theory

---

[37]<u>Id.</u>

[38]<u>Id.</u> at 10-11.

[39]<u>Id.</u> at 11.

-18-

in an appropriate case. See Scanlan v. Texas A & M University, 343
F.3d 533, 537-38 (5th Cir. 2003) (remanding action to the district
court upon finding that the plaintiffs had stated a § 1983 claim
under the state-created danger theory).

In Covington County the Fifth Circuit stated:

> Although we have not recognized the [state-created
> danger] theory, we have stated the elements that such a
> cause of action would require. The *Scanlan* panel
> explained that the state-created danger theory requires
> "a plaintiff [to] show [1] the defendants used their
> authority to create a dangerous environment for the
> plaintiff and [2] that the defendants acted with
> deliberate indifference to the plight of the plaintiff."
> *Scanlan*, 343 F.3d at 537-38. To establish deliberate
> indifference for purposes of state-created danger, the
> plaintiff must show that "[t]he environment created by
> the state actors must be dangerous; they must know it is
> dangerous; and . . . they must have used their authority
> to create an opportunity that would not otherwise have
> existed for the third party's crime to occur."
> *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th
> Cir. 2001) (citation and internal quotation marks
> omitted); *see also McClendon*, 305 F.3d at 326 n. 8 ("To
> act with deliberate indifference, a state actor must know
> of and disregard an excessive risk to the victim's health
> or safety.") (internal quotation marks and alterations
> omitted). Critically, this court has explained that the
> "state-created danger theory is inapposite without a
> known victim." *Rios*, 444 F.3d at 424 (citation and
> internal quotation marks omitted); *see also Lester v.
> City of Coll. Station*, 103 Fed. Appx. 814, 815-16 (5th
> Cir. 2004) ("Even if it is assumed that the state-created
> danger theory applies, liability exists only if the state
> actor is aware of an *immediate danger facing a known
> victim*.") (citing *Saenz v. Heldenfels Bros., Inc.*, 183
> F.3d 389, 392 (5th Cir. 1999) (emphasis added).

675 F.3d at 865.

Plaintiff argues that her due process claim should survive
dismissal at this state of the proceedings because she

has alleged that she was placed in danger as a result of
acts and omissions by CFISD both before and after the
brutal sexual assault.  Through its custom and practice
of ignoring sexual activity that occurred in the high
school stairwells and refusing to enforce the student
code of conduct and policies prohibiting sexual
harassment, sexual assault and dating violence, CFISD
created a dangerous environment and increased the risk of
harm to Roe from her abusive boyfriend.[40]

Plaintiff's allegations do not assert a state-created danger claim
because they do not allege the existence of immediate danger facing
a known victim.  At most plaintiff alleges that school officials
were aware of some general deficiencies in school security.
Plaintiff does not allege that the school knew about an immediate
danger to her, nor can the court infer such knowledge from the
pleadings.  Without such allegations, the state-created danger
claim necessarily fails.

The Fifth Circuit has

consistently cautioned against finding liability under
the state-created danger theory based upon an ineffective
policy or practice in cases where the plaintiff's injury
is inflicted by a private actor.  In *Rivera v. Houston
Independent School District*, for example, we rejected a
state-created danger claim against a school after a
student died as a result of gang-related violence, and
explained:

> [T]o hold HISD responsible for the ultimate
> ineffectiveness of [its policies designed to
> combat gang violence] would turn the Due
> Process Clause's limited duty of care and
> protection into a guarantee of shelter from
> private violence.  This result would be
> inimical to the Supreme Court's conclusion [in
> *DeShaney*] that the Due Process Clause does not

---

[40]Plaintiff's Opposition, Docket Entry No. 11, pp. 30-31.

> require the State to protect individuals from
> private violence.
>
> 349 F.3d [244,] 250 [5th Cir. 2003]; *see also Doe v.*
> *Hillsboro Independent Sch. Dist.*, 113 F.3d 1412, 1415
> (5th Cir. 1997)[(en banc)] (finding no viable state-
> created danger claim in case where student was raped by
> a school custodian with no known criminal history, and
> explaining that a "post hoc attribution of known danger
> would turn inside out this limited exception to the
> principle of no duty").

Covington County, 675 F.3d at 866. The court therefore concludes

that even if the state-created danger theory were viable in this

circuit, the plaintiff's factual allegations do not support a claim

under that theory.


   2.   Plaintiff Fails to Allege Facts that Support a Plausible
        Claim for Governmental Liability

   Defendant argues that the court should dismiss plaintiff's

§ 1983 claim because she has failed to plead sufficient facts to

establish local government liability under Monell, in which the

Court stated: "[I]t is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the

injury that the government as an entity is responsible under

§ 1983." 98 S. Ct. at 2037-38. Because a local governmental

entity like CFISD cannot be held liable under § 1983 on a

respondeat superior theory, id. at 2036, to state a viable § 1983

claim against CFISD, plaintiff must allege facts capable of raising

an inference that:

(1)     the constitutional violation was caused as the
        direct result of the execution of an official
        "custom" or "policy";

(2)     the custom or policy was approved or sanctioned by
        the entity's "final policymaker"; and

(3)     the final policymaker acted with "deliberate
        indifference" and the custom or policy was the
        "moving force" behind the violation.

See Piotrowski, 237 F.3d at 578.  Only by satisfying all three of

these elements can a plaintiff "distinguish individual violations

perpetrated by local government employees from those that can be

fairly identified as actions of the government itself."  Id.


        (a)     Plaintiff's Official Policy, Custom, or Practice
                Allegations Fail

        Plaintiff alleges that the CFISD Board of Trustees adopted

"official" policies pertaining to sexual assault and dating

violence, harassment, and retaliation,[41] but does not allege that

these official policies required school staff to ignore sexual

assault of students, to conduct faulty investigations, or to harass

or discriminate against any class of students.  Instead, plaintiff

alleges that CFISD had a policy, custom, or practice — official

and/or unofficial — of providing less protection to female victims

of sexual assault and dating violence.[42]  Plaintiff also alleges

_____

[41]Plaintiff's Complaint, Docket Entry No. 1, pp. 6-8 ¶¶ 25-33);
Plaintiff's Opposition, Docket Entry No. 11, pp. 20-21.

[42]Plaintiff's Complaint, Docket Entry No. 1, pp. 19-20 ¶¶ 100-

that CFISD did not properly hire and train staff and police officers charged with preventing, recognizing, and responding to complaints of sexual assault and dating violence giving rise to an official and/or unofficial policy, custom, or practice condoning the misconduct to which she was subjected.[43]   Thus, instead of pointing to a formally adopted policy that was the "moving force" behind the constitutional violations that she alleges, plaintiff contends that CFISD is liable under § 1983 because the officials at Cypress Creek High School failed to properly investigate her complaints of assault, harassment, and retaliation, and failed to properly hire or train the school staff and officers to properly respond to complaints of such incidents.   Asserting that "the failure to train municipal employees may also constitute a 'policy,' when it 'reflects a "deliberate" or "conscious" choice by a municipality,'"[44] plaintiff argues that she has alleged "sufficient facts to support a plausible inference of a constitutionally infirm custom, practice or policy."[45]

Acts that do not rise to the level of official policy may create governmental liability if they are sufficiently widespread

[42](...continued)
103.

[43]Id. at 20-21 ¶ 104.

[44]Plaintiff's Opposition, Docket Entry No. 11, p. 22.

[45]Id.

and pervasive to constitute a "custom" or "practice."  To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiff must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts.  See Zarnow v. City of Wichita Falls, Texas, 614 F.3d 161, 169 (5th Cir. 2010), cert. denied, 131 S. Ct. 3059 (2011) ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct.").  Moreover, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'"  Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 851 (5th Cir. 2009), cert. denied, 131 S. Ct. 66 (2010).  A single act of sexual assault by a student directed solely at another student does not demonstrate a custom or policy of the school district to be deliberately indifferent to sexual assault as a general matter.  See McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989) (recognizing that a pattern requires "sufficiently numerous prior incidents"); Pineda v. City of Houston, 291 F.3d 325, 329-30 (5th Cir. 2002), cert. denied, 123 S. Ct. 893 (2003) (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry in one of the nation's largest cities and police forces).

Plaintiff has not alleged facts capable of raising a reasonable inference that there were other incidents of student-on--student sexual assault, harassment, or bullying at Cypress Creek High School or at any other CFISD school. Nor has plaintiff alleged facts capable of raising a reasonable inference that other incidents of student-on-student sexual assault, harassment, or bullying occurred long enough or frequently enough to warrant attributing knowledge or constructive knowledge to CFISD's Board of Trustees, or that such conduct was caused by defective policies or by the board's failure to adopt different policies. "[P]roof of a single instance of unconstitutional activity is not sufficient for § 1983 municipal liability." Valentine Foundation v. Uphoff, 211 F. App'x 276, 278 (5th Cir. 2006) (per curiam) (citing McConney, 863 F.2d at 1184 ("Isolated instances . . . are inadequate to prove knowledge and acquiescence by policymakers.")).

Plaintiff's allegations that defendant failed to properly hire or train school staff or police officers are similarly deficient due to plaintiff's failure to allege facts capable of proving a pattern of prior incidents. See Sanders-Burns v. City of Plano, 594 F.3d 366, 382 (5th Cir. 2010). Nor has plaintiff alleged facts capable of proving that the need for better hiring or training practices was "obvious and obviously likely to result in a constitutional violation" as required to support liability based on a single incident. Id. Because plaintiff has failed to allege

facts capable of proving a pattern of constitutional violations
that would have made it obvious to CFISD's Board of Trustees that
different policies for hiring or training school personnel were
needed to prevent the harm that occurred to plaintiff, or to
prevent students from sexually assaulting other students,
plaintiff's factual allegations are not sufficient to state a
§ 1983 claim against CFISD based on her assertions that CFISD
maintained a custom or practice of providing less protection to
female assault victims or of deliberately ignoring acts of student-
on-student sexual misconduct.[46]

---

[46]Quoting Thomas v. City of Galveston, Texas, 800 F.Supp.3d
826, 842 (S.D. Tex. 2011), plaintiff argues that she has alleged
sufficient facts to support a plausible inference of a
constitutionally infirm policy, custom, or practice, because "it is
exceedingly rare that a plaintiff will have access to (or personal
knowledge of) specific details regarding the existence or absence
of internal policies or training procedures prior to discovery."
Plaintiff's Opposition, Docket Entry No. 11, p. 22. In Thomas the
court sought to harmonize the Fifth Circuit's holding in Leatherman
v. Tarrant County Narcotics Intelligence & Coordination Unit, 113
S. Ct. 1160 (1993), that there is no heightened pleading standard
for § 1983 claims against municipalities, with the Supreme Court's
subsequent holdings in Twombly, 127 S. Ct. at 1974, requiring
plaintiffs to plead enough facts to state a claim to relief that is
plausible on its face, and Iqbal, 129 S. Ct. at 1949, that "[a]
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." In Thomas,
the court suggested a "middle of the road" approach that requires
more than "boilerplate allegations," but would not require
plaintiffs to plead "specific factual details." 800 F.Supp.2d at
842. Thomas held that:

> [A] plaintiff suing a municipality must provide fair
> notice to the defendant, and this requires more than
> generically restating the elements of municipal
> (continued...)

(b) Plaintiff's Policy Maker Allegations Fail

Asserting that "[i]dentification of the final policymaker is a question of state law[,]"[47] and that "[u]nder well-established Texas law, the final policymaker for a Texas independent school district is its board of trustees,"[48] defendant argues that plaintiff has not alleged facts capable of raising a reasonable inference that CFISD's Board of Trustees had any involvement in what happened to her.[49]

---

[46](...continued)
liability. Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy.

800 F. Supp. 2d at 843-44.

Plaintiff neither alleges nor argues that the allegations in her complaint satisfy the pleading standard stated in Thomas. Although plaintiff seems to argue that under Thomas she has no pleading responsibility to factually identify the policies she claims resulted in her constitutional deprivations, plaintiff fails to acknowledge that the Thomas court granted the defendant's motion to dismiss because plaintiff failed to plead facts sufficient to support claims of governmental liability. Plaintiff's allegations suffer from the same deficiencies identified in Thomas. Plaintiff repeatedly asserts the boilerplate Monell standards for governmental liability, but she fails to support her allegations with any facts capable of raising a reasonable inference that the defendant is liable for the misconduct alleged.

[47]Defendant's M/D, Docket Entry No. 9, p. 11.

[48]Id.

[49]Id. at 11-12.

Plaintiff responds that she has sufficiently pled facts that CFISD's Board of Trustees

> delegated final policy-making authority to the CFISD chief of police through its Board Policy CKE (LOCAL) "*for the administration of police services,*" which would include CFDP's investigation and response to sexual assaults on campus, CFPD's interaction and cooperation with local law enforcement and CFPD's enforcement of the law and student code of conduct.[50]

In pertinent part plaintiff alleges:

> Through CFISD Board Policy CKE(LOCAL), the Board of Trustees delegates final policy making authority as it relates to the operation of police department to the CFPD chief of police: "To carry out the provisions of this policy, the police department shall compile and maintain a departmental regulations manual that describes and sets forth departmental regulations, operational procedures, and rules pertaining to the administration of police services. The chief of police shall review the manual annually and make any appropriate revisions.[51]

Plaintiff also argues that contrary to defendant's arguments, she has also identified policies over which the Board of Trustees retains control and final policymaking authority as the impetus for her constitutional injuries, e.g., CFISD's 2013-2014 Discipline Management Plan and Student Code of Conduct, and CFISD Board Policies FFH(LEGAL) and FFH (LOCAL).[52] Plaintiff argues that she has also alleged widespread customs, practices, and policies

---

[50]Plaintiff's Opposition, Docket Entry No. 11, p. 20 (citing Plaintiff's Complaint, Docket Entry No. 1, pp. 6-8 ¶¶ 28-33).

[51]Plaintiff's Complaint, Docket Entry No. 1, pp. 7-8, ¶ 33.

[52]Plaintiff's Opposition, Docket Entry No. 11, pp. 20-21 (citing Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶¶ 25-27).

attributable to the Board of Trustees that were the moving force behind her constitutional injuries, e.g.,

> refusing to investigate violations of the law and the student code of conduct, specifically with regard to offenses of sexual assault and dating violence; refusing to enforce the student code of conduct by appropriately disciplining male students who commit sexual assault and dating violence; and failing to comply with Texas law and its "paper policy" to prevent sexual assault and dating violence on its campuses and failing to protect female victims.[53]

Identification of the "final policymaker" is a question of state law. See City of St. Louis v. Praprotnik, 108 S. Ct. 915, 924 (1988). The "final policymaker" is the official or officials whose decisions are unconstrained by policies imposed by a higher authority. See Beattie v. Madison County School District, 254 F.3d 595, 603 (5th Cir. 2001) (explaining that a superintendent is not a final policymaker because her decision was subject to review by the school board). Under Texas law the final policy-making authority for a school district is the district's board of trustees. See Texas Education Code §§ 11.151 & 11.1511. See also Rivera, 349 F.3d at 247 & n. 2 (quoting Tex. Educ. Code § 11.151(b) ("Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'")).

Plaintiff's Original Complaint fails to allege facts capable of linking any unconstitutional policy, practice, or custom to

---

[53]Id. at 21.

CFISD's Board of Trustees. Instead, plaintiff alleges that the CFISD Board of Trustees delegated final policymaking authority to the Chief of the CFPD. In pertinent part plaintiff alleges:

> The constitutional injury inflicted by CFISD was caused by a person(s) with final policy making authority. Non-retired CFISD Chief of Police Alan Bragg established the department in 2011 and was police chief during all relevant times. The Board of Trustees specifically delegated final policy making authority to the police chief in the operation of the police department. Upon information and belief, Roe alleges that Bragg knew about the above described conduct, facilitated it, condoned it, and/or turned a blind eye to it.[54]

But missing from plaintiff's complaint are any facts supporting a conclusion that CFISD's Board of Trustees delegated final policymaking authority to the chief of the CFPD. See McCall v. Dallas Independent School District, 169 F. Supp. 2d 627, 635 (N.D. Tex. 2001) (plaintiff's complaint was deficient because it failed "to allege any facts supporting a conclusion" that the school board delegated policymaking authority to the superintendent). See also Rivera, 349 F.3d at 248 (distinguishing decision-making from policy-making). Also missing from plaintiff's complaint are any allegations of fact capable of raising an inference that CFISD's Board of Trustees or CFISD's Chief of Police had any knowledge, awareness, or involvement in any of the acts about which she complains. Although plaintiff alleges that CFISD's Chief of Police knew of the conduct about which she complains, facilitated it,

_____

[54]Plaintiff's Complaint, Docket Entry No. 1, pp. 19-20 ¶ 100.

condoned it, and/or turned a blind eye to it,[55] plaintiff fails to allege any facts showing how the Board of Trustees or the Chief of Police would have gained such knowledge or when. See <u>Saldana v. Angleton Independent School District</u>, Civil Action No. 3:16-CV-159, 2017 WL 749292, at *5 (S.D. Tex. 2017) (finding allegations that school board had actual knowledge of the first assault of the plaintiff's child deficient because the plaintiff failed to allege facts explaining how the school board may have gained knowledge or when). Accordingly, the court concludes that plaintiff's allegations fail to allege facts capable of raising an inference that any of the policies, customs, or practices about which she complains were approved or sanctioned by CFISD's "final policymaker."

## IV. **Plaintiffs' Request for Leave to Amend Will Be Denied**

At the end of her responsive briefing to the defendant's motions to dismiss, the plaintiff requests leave to amend her complaint "[s]hould the Court determine it necessary . . . to more specifically label her claim of due process under the state-created danger theory."[56] Asserting that her due process claim based on the state-created danger theory should survive dismissal at this stage of the proceedings, plaintiff states:

---

[55]Plaintiff's Complaint, Docket Entry No. 1, pp. 19-20 ¶ 100.

[56]Plaintiff's Opposition, Docket Entry No. 11, p. 31.

Here, Roe has alleged that she was placed in danger as a result of acts and omissions by CFISD both before and after the brutal sexual assault. Through its custom and practice of ignoring sexual activity that occurred in the high school stairwells and refusing to enforce the student code of conduct and policies prohibiting sexual harassment, sexual assault and dating violence, CFISD created a dangerous environment and increased the risk of harm to Roe from her abusive boyfriend.[57]

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "Although Rule 15(a) 'evinces a bias in favor of granting leave to amend,' it is not automatic." Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996), cert denied, 117 S. Ct. 686 (1997) (quoting Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 597 (5th Cir. 1981)). "A decision to grant leave is within the discretion of the trial court. Its discretion, however, is not broad enough to permit denial if the court lacks a substantial reason to do so." Id. (citing State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-1303 (5th Cir. 1995) (per curiam)). Generally, a district court errs in dismissing a complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir.) (per curiam), cert. denied, 119 S. Ct. 156 (1998). If, however, a complaint alleges the plaintiff's best case, there is no need for further amendment. Id. See also Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999) (per

---

[57]Id. at 30-31.

curiam) (dismissing plaintiff's _pro se_ action because court could perceive of no viable claim plaintiff could include in an amended complaint based on the underlying facts). The Fifth Circuit has also held that in exercising its discretion, a court may consider various criteria including, _inter alia_, the futility of the proposed amendment. See _Whitaker v. City of Houston, Texas_, 963 F.2d 831, 836 (5th Cir. 1992) (citing _Foman v. Davis_, 83 S. Ct. 227, 230 (1962)).

Plaintiff filed this action on August 17, 2018 (Docket Entry No. 1), defendant filed its motion to dismiss on October 19, 2018 (Docket Entry No. 9), and plaintiff responded on November 9, 2018, (Docket Entry No. 11), by arguing that her complaint is factually sufficient to survive defendant's motion to dismiss. Nevertheless, in the last paragraphs of her response to the defendant's motion to dismiss plaintiff, includes a request for leave to amend unaccompanied by a proposed amendment. The law in this circuit is that plaintiffs are not entitled to an opportunity to satisfy the pleading requirements for governmental liability when, in response to a motion to dismiss, the plaintiffs simply declare the adequacy of their complaint and fail to take advantage of the opportunity to amend as a matter of right. See _Spiller v. City of Texas City, Police Department_, 130 F.3d 162, 167 (5th Cir. 1997) (citing _Jacquez v. Procunier_, 801 F.2d 789, 792-793 (5th Cir. 1986)). See _also Babb v. Dorman_, 33 F.3d 472, 479 (5th Cir. 1994) (affirming

district court's refusal to grant plaintiff leave to amend his complaint after it had granted defendant's motion to dismiss because plaintiff had declared the sufficiency of his pleadings and failed to offer a sufficient amended complaint in response to the defendant's motion).

Moreover, for the reasons stated in § III.B.1(b), above, the court has already concluded that the facts as alleged are not sufficient to support a substantive due process claim under the state-created danger theory. For the reasons stated in § III.B.1(b), above, the court is persuaded that granting plaintiff's motion for leave to amend to add a due process claim based on the state-created danger theory of liability would be futile. See Rio Grande Royalty Co. v. Energy Transfer Partners, 620 F.3d 465, 468 (5th Cir. 2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss."). Accordingly, the plaintiff's request for leave to amend will be denied.

## V. **Conclusions and Order**

For the reasons stated in § III, above, Defendant's Motion to Dismiss Plaintiff's Section 1983 Claim (Docket Entry No. 9) is **GRANTED**. For the reasons stated in § IV, above, plaintiff's request for leave to file an amended complaint to assert a due

process claim based on the state-created danger theory made in the final paragraphs of Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Section 1983 Claim (Docket Entry No. 11), is **DENIED**. Accordingly, plaintiff's claim for violation of the Equal Protection Clause of the Fourteenth Amendment asserted against Cypress-Fairbanks Independent School District under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE.**

**SIGNED** at Houston, Texas, on this the 29th day of November, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE