IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
**ENTERED**
November 20, 2020
David J. Bradley, Clerk

| | | |
|---|---|---|
| JANE ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2850 |
| | § | |
| CYPRESS-FAIRBANKS INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Roe, brings this action against defendant, the Cypress-Fairbanks Independent School District ("CFISD"), for violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681.[1] Pending before the court are Defendant's Motion for Final Summary Judgment ("Defendant's MSJ") (Docket Entry No. 33), Defendant's Motion to Exclude Testimony of Robert Geffner, PhD ("Defendant's Motion to Exclude") (Docket Entry No. 35), and Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion for Final Summary Judgment ("Plaintiff's Motion to File Sur-Reply")(Docket Entry No. 47). For the reasons stated below Plaintiff's Motion to File Sur-Reply, and Defendant's MSJ will both be granted. Because the court has been able to rule on Defendant's MSJ without referencing Geffner's testimony, Defendant's Motion to Exclude will be denied as moot.

---

[1]Plaintiff's Original Complaint and Jury Demand ("Plaintiff's Complaint"), Docket Entry No. 1, pp. 16-18 ¶¶ 81-92. All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF. Pursuant to an earlier Memorandum Opinion and Order, Docket Entry No. 14, plaintiff's claims for violation of civil rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. §§ 1983 and 1988 have been dismissed.

## I.  **Standard of Review**

Defendant CFISD seeks summary judgment on the claim that plaintiff has asserted for violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681.  Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553).  If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by admissible evidence that facts exist over which there is a genuine issue for trial.  Id.  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

-2-

parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. See also Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (same). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

## II.   **Undisputed Facts**

### A.   **Teen Dating Violence**

In May of 2007 Texas Governor Perry signed House Bill ("HB") 121 into law mandating that all school districts in Texas adopt and implement a policy addressing teen dating violence.  The policy must include (1) a definition of dating violence consistent with the Texas Family  Code, (2) safety planning, (3) enforcement of protective orders, (4) school-based alternatives to protective orders, (5) training for teachers and administrators, (6) counseling for affected students, and (7) awareness education for students and parents/guardians. See Texas Education Code § 37.0831.  To assist school districts in meeting these statutory requirements, a group of non-profits and government agencies created a document entitled, "A Guide to Addressing Dating Violence in Texas Schools," which outlines a model policy for schools intended to satisfy the statutory mandate.[2]

---

[2]Exhibit 24 to Plaintiff's Opposition to Defendant's Motion
(continued...)

-3-

CFISD is the third largest school district in Texas, with 91 campuses and more than 117,000 students.[3]  CFISD policy FFH (LOCAL) addresses discrimination, harassment, and retaliation involving students and expressly provides that "[t]he District prohibits dating violence, as defined by this policy."[4]  Policy FFH (LOCAL) contains reporting procedures for students to follow if they experience prohibited conduct, and notification that any student who is dissatisfied with the determination of an investigation may appeal pursuant to policy FNG (LOCAL).[5]  Information regarding CFISD's policies is available to students and parents both online and in the Student Handbook.[6]  CFISD also provides annual staff training on sexual harassment and bullying.[7]

---

[2](...continued) for Final Summary Judgment ("Plaintiff's Opposition"), Docket Entry No. 42-24, p. 7.

[3]Declaration of Marney Collins Sims ("Sims Declaration"), Exhibit 1 to Defendant's MSJ, Docket Entry No. 34-1, p. 2 ¶ 3.

[4]Policy FFH (LOCAL), p. 1, Exhibit A to Sims Declaration, Docket Entry No. 34-1, p. 6.

[5]Sims Declaration, Exhibit 1 to Defendant's MSJ, Docket Entry No. 34-1, p. 2 ¶¶ 4-5 (citing Exhibit B, policy FNG (LOCAL) in effect during the 2013-2014 school year, Docket Entry No. 34-1, pp. 13-19).

[6]Id. ¶ 6 (citing Exhibits C and D, relevant excerpts from the Student Handbook and Student Code of Conduct, respectively, for the 2013-2014 school year, Docket Entry No. 34-1, pp. 20-104).

[7]Id. at 3 ¶ 7 (citing Exhibit E, training provided to staff members during the 2013-2014 school year, Docket Entry No. 34-1, pp. 105-58; Exhibit F, training on bullying provided at CFISD's
(continued...)

## B.   Plaintiff's Relationship with John Doe

Plaintiff met John Doe ("Doe") in 2011 when they were both in seventh grade at a CFISD middle school.[8]  While in middle school plaintiff and John Doe became "a couple."[9]  As the relationship developed, plaintiff's grades fell and she was disciplined at school for tardiness, truancy, and "inappropriate physical contact with peer."[10]  Plaintiff's mother tried to intervene by forbidding plaintiff from seeing Doe outside of school, and expressing concern to an assistant principal.[11]

## C.   Warning Signs

In 2013 plaintiff and Doe enrolled as freshman at Cypress Creek High School where their relationship continued.[12]  Plaintiff and Doe were together as much as possible at school; they walked

---

[7](...continued)
2012 Leadership Conference, Docket Entry No. 34-1, pp. 159-86; and Exhibit G, training provided at CFISD's 2013 Leadership Conference, Docket Entry No. 34-1, pp. 187-215).

[8]Declaration of Madison Lynn Smith ("Madison Smith Declaration"), Exhibit 1 to Plaintiff's Opposition, Docket Entry No. 42-1, p. 2 ¶ 3.

[9]Id. ¶ 4.

[10]Id. at 3 ¶ 11.  See also Student — Behavior History, CFISD-ROE 001034-001035, Exhibit 20 to Plaintiff's Opposition, Docket Entry No. 42-20, pp. 2-3.

[11]Declaration of Lauren Welch Smith ("Lauren Smith Declaration"), Exhibit 2 to Plaintiff's Opposition, Docket Entry No. 42-2, p. 3 ¶¶ 6-7, 12).

[12]Madison Smith Declaration, Docket Entry No. 42-1, p. 3 ¶ 7.

together to every class, and Doe refused to let plaintiff leave him until she hugged or kissed him.   Plaintiff and Doe argued frequently in the hallways.  Doe would grab plaintiff's arm if he thought she was looking at someone else, and he would make her wear his jacket if he thought her clothing was too revealing.[13]   Early in the Fall 2013 semester, plaintiff and Doe left school and went to Doe's house where they had sexual intercourse for the first time.[14]  Subsequently plaintiff and Doe engaged in sexual conduct on campus, including having sexual intercourse in stairwells because stairwells did not have security cameras and were not consistently patrolled by staff or officers.[15]

In December of 2013 plaintiff's mother told assistant principal Carol Gibson that plaintiff was having academic and emotional difficulties because of an unhealthy relationship with Doe.  She told Gibson that Doe was controlling, emotionally and possibly physically abusive, and she asked Gibson what the school could do about the situation.[16]  Subsequently, when Gibson saw

_____

[13]Id. ¶ 8.

[14]Id. ¶ 14.

[15]Id. ¶¶ 12 and 15.

[16]Lauren Smith Declaration, Docket Entry No. 42-2, p. 4 ¶ 14. See also Oral and Videotaped Deposition of Carol Alexander (formerly Carol Gibson, ("Gibson Deposition")), pp. 25:9-26:17, Exhibit 7 to Plaintiff's Opposition, Docket Entry No. 42-7, pp. 10-11.

plaintiff together with Doe, she reminded plaintiff that her parents did not want her seeing him.[17]

During winter break in late December of 2013, after becoming upset with her mother because she would not let her speak with Doe, plaintiff cut herself on her arms.  Concerned for plaintiff's mental health, her mother took plaintiff to Cypress Creek Hospital where plaintiff told doctors that she cut herself to make her mother feel bad for keeping her from Doe.[18]  Plaintiff's mother notified plaintiff's softball coach that she would miss practice because of the cutting incident and shared her concern about Doe, but did not share that plaintiff had cut herself intentionally.[19]

On March 4, 2014, plaintiff's mother met with assistant principals, Gibson and Rashad Godbolt, to discuss plaintiff's academic and behavior issues.  Plaintiff was present for part of the meeting and while she was present her mother took away her cell phone.  Expressing concern that plaintiff's issues were caused by her abusive relationship with Doe,[20] plaintiff's mother asked for a schedule change to ensure that plaintiff and Doe would not have any classes together, but was told that such a change could not be

---

[17]See also Gibson Deposition, pp. 26:18-27:4, Exhibit 7 to Plaintiff's Opposition, Docket Entry No. 42-7, pp. 11-12.

[18]Lauren Smith Declaration, Docket Entry No. 42-2, p. 4 ¶ 13. See also Madison Smith Declaration, Exhibit 1 to Plaintiff's Opposition, Docket Entry No. 42-1, p. 3 ¶ 10, and Medical Records, Exhibit 18 to Plaintiff's Opposition, Docket Entry NO. 42-18.

[19]Lauren Smith Declaration, Docket Entry No. 42-2, p. 4 ¶ 14.

[20]Id. ¶¶ 15-16.

made.   The only outcome of the meeting was that plaintiff was required to attend after school tutorials.[21]

On Friday, March 7, 2014, when plaintiff and Doe were together after school waiting for buses, Doe rubbed plaintiff's stomach commenting that her belly felt bigger and that he thought she was pregnant.  Plaintiff responded, "Don't say that."[22]

**D.   Sexual Assault**

On March 10, 2014, Doe met plaintiff outside her last class and the two of them walked down the hall together at dismissal time, which was 2:30 p.m.  Plaintiff went to an after school tutorial for math but only stayed about 15 minutes, after which she left to meet Doe who was waiting for her in the hallway.  Plaintiff and Doe went to Stairwell #2 in one the Freshman area hallways where they engaged in sexual activity.  Doe put a hand down plaintiff's pants, digitally penetrated her, and then pressed his entire fist into her vagina lifting her off the floor.  When Doe removed his fist, plaintiff began bleeding profusely.  They left the stairwell on the second floor and walked together across the campus to bathrooms near the athletic area where plaintiff threw away an undergarment that was soaked in blood.  Plaintiff and Doe

---

[21]Id. ¶ 17.

[22]Madison Smith Declaration, Docket Entry No. 42-1, p. 4 ¶ 17.

-8-

then walked to the front office area where plaintiff used Doe's phone to call for a ride home.[23]

Plaintiff's grandfather came to take her home.  Because she was still bleeding, plaintiff sat on her binder to protect his car seat.[24]  Telling her family that she was having "female issues," plaintiff went to her room, showered, and fell asleep.  Several hours later plaintiff awoke in pain, admitted to her mother that Doe had assaulted her, and went to the hospital emergency room.  At the hospital, plaintiff's mother demanded that the authorities be contacted.[25]

The hospital contacted the CFISD Police Department ("CFISD-PD"), and CFISD officers respond to the call, took a report, and sent it to the Harris County Sheriff's Office ("HCSO"), but did not follow up with the HCSO, investigate the assault, or communicate to school administrators about it.[26]  Following an investigation conducted by the HCSO, the Harris County District Attorney's Office refused to accept charges against Doe because it determined the act was consensual between plaintiff and Doe.[27]

---

[23]Id. at 5 ¶ 18.

[24]Declaration of Gale Welch ("Gale Welch Declaration"), Exhibit 4 to Plaintiff's Opposition, Docket Entry No. 42-4, p. 3 ¶ 9.

[25]Madison Smith Declaration, Docket Entry No. 42-1, p. 5 ¶¶ 20-21; Lauren Smith Declaration, Docket Entry No. 41-2, p. 5 ¶¶ 19-21.

[26]Oral and Videotaped Deposition of Chanta Mitchell, pp. 27:10-44:10, Exhibit 9 to Plaintiff's Opposition, Docket Entry No. 42-9, pp. 8-23.

[27]HCSO Records, Exhibit 13 to Defendants' MSJ, Docket Entry No.
(continued...)

Medical records for plaintiff's visit to the emergency room indicate a preliminary diagnosis of "Sexual Assault Child."[28] Plaintiff underwent a SANE (Sexual Assault Nurse Examiner) exam and her injuries were photographed.[29]   Plaintiff suffered severe internal and external injuries from the assault and underwent the first of two surgeries in the early morning hours of March 11, 2014.[30]  While waiting for surgery, plaintiff learned that she was five weeks pregnant.[31]  Struggling to understand why Doe injured plaintiff, plaintiff's mother concluded that he did it to cause her to miscarry.[32]   A medical examination two days later revealed additional injuries that required a second surgery after which plaintiff remained hospitalized for nearly a week.[33]  Plaintiff's hospitalization was followed by weeks of wound care, and a procedure to terminate the pregnancy.[34]

---

[27](...continued)
Docket Entry No. 34-13.

[28]Medical Records, Exhibit 17 to Plaintiff's Opposition, Docket Entry No. 42-17, p. 27.

[29]Medical Records, Exhibit 19 to Plaintiff's Opposition, Docket Entry No. 42-19.

[30]Madison Smith Declaration, Docket Entry No. 42-1, p. 6 ¶ 23; Lauren Smith Declaration, Docket Entry No. 42-2, p. 5 ¶ 22.

[31]Madison Smith Declaration, Docket Entry No. 42-1, p. 5 ¶ 22; Lauren Smith Declaration, Docket Entry No. 42-2, p. 5 ¶ 23.

[32]Lauren Smith Declaration, Docket Entry No. 42-2, p. 5 ¶ 25.

[33]Madison Smith Declaration, Docket Entry No. 42-1, p. 6 ¶¶ 25-26.

[34]Id. ¶¶ 27-28.

**E.   CFISD's Response to Plaintiff's Report of Sexual Assault**

Plaintiff's mother notified Assistant Principal Gibson of the assault the morning after it occurred.[35]  Plaintiff's grandmother also spoke with Gibson and described to her the seriousness of plaintiff's injuries.[36]  Several days later plaintiff's mother and grandfather met with Gibson to discuss the assault.  Plaintiff's mother asked if there was a video of the stairwell and, if so, asked to see it.  Gibson told plaintiff's mother that she would not be able to see any video.  Focused on the fact that plaintiff went willingly into the stairwell with Doe, Gibson concluded that the assault was merely a consensual act that had gone too far.[37]  Gibson told plaintiff's mother and grandfather, "If we punish him, we have to punish her."[38]

No one provided plaintiff or her mother a written report of any findings, made plaintiff or her mother aware of CFISD's

---

[35]Lauren Smith Declaration, Docket Entry No. 42-2, pp. 5-6 ¶ 26.

[36]Declaration of Judy Welch ("Judy Welch Declaration"), Exhibit 3 to Plaintiff's Opposition, Docket Entry No. 42-3, p. 3 ¶ 11.

[37]Answer to Interrogatory No. 4, Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories, Exhibit 22 to Plaintiff's Opposition, Docket Entry No. 42-22, p. 4.  See also Gibson Deposition, pp. 58:24-59:17, Exhibit 7 to Plaintiff's Opposition, Docket Entry No. 42-7, pp. 40-41 (Gibson relied only on the statements that she had in reaching her conclusion "early on" that it was a consensual act that had gone too far).

[38]Lauren Smith Declaration, Docket Entry No. 42-2, p. 6 ¶ 28; Gale Welch Declaration, Exhibit 4 to Plaintiff's Opposition, Docket Entry No. 42-4, pp. 3-4 ¶¶ 12-13.

policies or complaint procedures, or notified plaintiff or her mother of the right to file a complaint or appeal Gibson's decision.  Nor were plaintiff or her mother ever notified that they had a right to file a complaint with the United States Department of Education's Office for Civil Rights.[39]   CFISD offered no accommodations to the plaintiff and took no measures to protect her from harassment and retaliation.   Plaintiff's mother sought assistance in the form of counseling from plaintiff's counselor, Deadrine Rhodes, but was told that the school "does not do that."[40] Plaintiff missed days of instruction and struggled academically. Even though the school designated plaintiff as "homebound," she received only weekly assignments delivered by a coach and did not receive any homebound instruction.[41]  Plaintiff failed classes that spring, and earned only 4.5 out of 7 credits.[42]

When plaintiff returned to Cypress Creek for the 2014-2015 school year she did not have any classes with Doe, but he remained at the school, and she saw him frequently.[43]  About a month into the school year some of Doe's friends accused her of falsely claiming

---

[39]Lauren Smith Declaration, Docket Entry No. 42-2, p. 6 ¶ 29.

[40]Id. at 7 ¶ 34.

[41]Id. ¶ 35.

[42]Id. ¶ 36.

[43]Id. ¶ 38.

that he raped her and trying to get him arrested.[44]  At some point Doe exchanged angry words with plaintiff following an altercation he had with her mother's boyfriend at a grocery store.  Doe told plaintiff he had a "tool" for her mother's boyfriend, which plaintiff understood as a threat to use a gun.[45]  Plaintiff's English teacher pulled her aside once and told her that she knew plaintiff had failed English the year before because she had dropped out,[46] and plaintiff was unable to play volleyball or softball because of her poor grades.[47]

## F.   Impact on Plaintiff's Education

In February of 2015 plaintiff withdrew from school for about a week, with plans to move to Indiana to live with her father to get away from Cypress Creek High School.  But the plans did not work out and she was forced to re-enroll at Cypress Creek.[48]

On June 30, 2015, plaintiff intentionally overdosed on Benadryl after enduring harassment that included a social media post of a photograph of a dead fetus "tagged" to plaintiff, posts

---

[44]Madison Smith Declaration, Docket Entry No. 42-1, p. 6 ¶ 30.

[45]Id. ¶ 31.

[46]Madison Smith Deposition, pp. 105:8-106:4, Exhibit 5 to Plaintiff's Opposition, Docket Entry No. 42-5, pp. 69-70.

[47]Madison Smith Declaration, Docket Entry No. 42-1, p. 6 ¶ 32.

[48]Id.; Lauren Smith Declaration, Docket Entry No. 41-2, p. 7 ¶ 38.

calling plaintiff a "baby killer," and posts encouraging plaintiff to kill herself.[49]

Subsequently, plaintiff went to live with her father in Indiana and enrolled there for the 2015-2016 school year. But in the spring of 2016, missing her mother, grandparents, and younger siblings, plaintiff returned to Houston and to Cypress Creek High School. Plaintiff's mother met with school counselor, Karen Clarkson, at least three times in an effort to have plaintiff's class schedule arranged so that she would not cross paths with Doe. Clarkson told plaintiff's mother that she would do what she could, but that the past could not be changed.[50] After only a few weeks, plaintiff was overwhelmed and unable to continue school.[51] Plaintiff's mother met with school personnel who encouraged her to withdraw plaintiff from school and to state on the withdrawal form that plaintiff would be home schooled to protect herself from truancy charges.[52] On April 13, 2016, at 17 years of age, plaintiff withdrew during the spring semester of her junior year and never returned to high school.[53]

---

[49]Madison Smith Declaration, Docket Entry No. 42-1, p. 7 ¶ 33.

[50]Lauren Smith Declaration, Docket Entry No. 41-2, p. 8 ¶ 41.

[51]Madison Smith Declaration, Docket Entry No. 40-1, p. 7 ¶¶ 34-35.

[52]Lauren Smith Declaration, Docket Entry No. 41-2, p. 8 ¶ 42.

[53]Madison Smith Declaration, Docket Entry No. 40-1, p. 7 ¶ 35.

-14-

### III. <u>Plaintiff's Motion for Leave to File Sur-Reply</u>

Asserting that "[i]n its Reply, Defendant cites new authorities, advances new arguments and relies on 'new' facts,"[54] plaintiff moves the court for leave to file a sur-reply because "[t]he interest of justice requires Plaintiff be allowed to respond."[55]  Asserting that plaintiff "has not shown 'exceptional or extraordinary circumstances that warrant a surreply,'" defendant argues that "her motion for leave should be denied."[56]   Although the Fifth Circuit has characterized sur-replies as "heavily disfavored," <u>Warrior Energy Services Corp. v. ATP Titan M/V</u>, 551 F. App'x 749, 751 n. 2 (5th Cir. 2014)(per curiam), defendant admits that its reply "cites some cases that were not cited in [its] original summary judgment motion, and . . . respond[s] to specific arguments raised in [plaintiff]'s response brief."[57]   Moreover, defendant does not argue that granting plaintiff's motion would cause it any prejudice.  Accordingly, to ensure that both parties are fully heard on the issues, the court concludes that plaintiff's motion for leave to file sur-reply should be granted.

---

[54]Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion for Final Summary Judgment, Docket Entry No. 47, p. 2.

[55]<u>Id.</u>

[56]Defendant's Response in Opposition to Plaintiff's Motion for Leave to File Sur-Reply, Docket Entry No. 48, p. 4.

[57]<u>Id.</u> at 3-4.

IV. **Analysis**

CFISD argues that it is entitled to summary judgment on plaintiff's Title IX claims because it did not have any reason to know that Doe posed a substantial risk of sexually assaulting plaintiff, because it did not respond to plaintiff's assault with deliberate indifference,[58] because plaintiff cannot establish a Title IX violation based on any alleged post-assault harassment,[59] and because the heightened risk theory of liability does not apply to the facts of this case.[60]   Asserting that "[t]his case arises from CFISD's deliberate indifference to its duties under Title IX and systemic failure to address sexual harassment and sexual violence on its campuses,"[61] plaintiff argues that CFISD intentionally discriminated against her in violation of Title IX because (1) CFISD's policies, practices, and failure to train students and staff to recognize, report, and respond to dating violence and sexual assault created a heightened risk that she would be assaulted, (2) CFISD acted with deliberate indifference to the known risk of dating violence and sexual assault when it created a high school campus culture in which sexual misconduct was

---

[58]Defendant's MSJ, Docket Entry No. 33, pp. 22-29.

[59]Id. at 29-31.

[60]Id. at 32.

[61]Plaintiff's Opposition to Defendant's Motion for Final Summary Judgment ("Plaintiff's Opposition"), Docket Entry No. 41, p. 6.

rampant, ignored clear warning signs and dismissed pleas from plaintiff's mother that her daughter was in danger, and (3) CFISD's actions in response to plaintiff's report of sexual assault were clearly unreasonable in light of the known circumstances because its administrators' investigation was tantamount to no investigation at all, its actions made plaintiff vulnerable to future harassment, and as a result, plaintiff dropped out of school.[62] Defendant replies that plaintiff's pre-assault heightened risk claim fails because the heightened risk theory is not applicable to the facts of this case, and, alternatively, plaintiff has no evidence that an official policy caused her injuries.[63] Defendant also argues that plaintiff's post-assault claims fail because it did not respond with deliberate indifference either to her complaint of sexual assault or to any known acts of post-assault harassment.[64] Plaintiff's surreply argues that defendant's reply exposes a summary judgment record laced with contradictions of fact, and that the summary judgment evidence supports a finding for her on each of the four factors that courts use to analyze Title IX pre-assault heightened risk claims.[65]

---

[62]Id. at 6 and 7.

[63]Defendant's Reply in Support of Motion for Final Summary Judgment ("Defendant's Reply"), Docket Entry No. 45, pp. 6-20.

[64]Id. at 20-28.

[65]Plaintiff's Surreply in Opposition to Defendant's Motion for
(continued...)

-17-

## A.   Applicable Law

Apart from exceptions not applicable to the facts of this case, Title IX of the Education Amendments of 1972 ("Title IX") prohibits discrimination on the basis of sex in all federally-funded educational programs by providing that

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). "A school that receives federal funding may be held liable for student-on-student sexual harassment." I.L. v. Houston Independent School District, 776 F. App'x 839, 842 (5th Cir. 2019) (citing Davis v. Monroe County Board of Education, 119 S. Ct. 1661, 1669 (1999), and Sanches v. Carrollton-Farmers Branch Independent School District, 647 F.3d 156, 165 (5th Cir. 2011)). To prove such a claim, a plaintiff must show that

> the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment.

Id. (quoting Doe v. Columbia-Brazoria Independent School District, 856 F.3d 681, 689 (5th Cir. 2017), and Sanches, 647 F.3d at 165). The Supreme Court has analogized official policy liability under Title IX to municipal liability for a policy or custom under 42

---

[65](...continued)
Final Summary Judgment ("Plaintiff's Surreply"), Docket Entry No. 47.

U.S.C. § 1983.   <u>See Gebser v. Lago Vista Independent School
District,</u> 118 S. Ct. 1989, 1999 (1998) (distinguishing Title IX
claims based on an official policy from those seeking to hold an
institution liable for the discriminatory acts of an individual).

"Deliberate indifference under Title IX means that the
school's response or lack of response was 'clearly unreasonable in
light of the known circumstances.'"   <u>I.L.,</u> 776 F. App'x at 842
(quoting <u>Sanches,</u> 647 F.3d at 167).   Title IX defendants may only
be held liable in damages for their own intentional acts.   <u>Davis</u>
119 S. Ct. at 1670-71 (citing <u>Gebser,</u> 118 S. Ct. at 1999-2000, for
holding that federal funding recipients could be held liable in
damages only when their own deliberate indifference effectively
caused the discrimination at issue).   "Neither negligence nor mere
unreasonableness is enough."   <u>I.L.,</u> 776 F. App'x at 842 (quoting
<u>Sanches,</u> 647 F.3d at 167).   "Schools need not 'remedy the
harassment or accede to a parent's remedial demands,' and 'courts
should refrain from second-guessing the disciplinary decisions made
by school administrators.'"   <u>Id.</u> (quoting <u>Sanches,</u> 647 F.3d at 167-
68).   <u>See also Davis,</u> 119 S. Ct. at 1673-74 (schools need not purge
themselves of all sexual harassment or expel every student accused
of sexual misconduct).   "There is no reason why courts, on a motion
. . . for summary judgment . . . could not identify a response as
not clearly unreasonably as a matter of law."   <u>Sanches,</u> 647 F.3d at
168 (quoting <u>Davis,</u> 119 S. Ct. at 1674).

**B.    Application of the Law to the Undisputed Facts**

Plaintiff argues that she has asserted two types of Title IX claims: (1) a pre-assault claim for creating a heightened risk that she would be assaulted;[66] and (2) a post-assault claims for responding with deliberate indifference to her assault and subsequent harassment.[67]

### 1.    Plaintiff Fails to Raise Genuine Issues of Material Fact as to Her Pre-Assault Heightened Risk Claim

Plaintiff alleges that CFISD is liable under Title IX for her pre-assault claim by alleging that "[a]s a result of CFISD's deliberate indifference, Plaintiff was subjected to a heightened risk that she would be a victim of dating violence and sexual assault.   This risk materialized when she was assaulted on campus."[68]   Citing C.T. v. Liberal School District, 562 F.Supp.2d 1324, 1339-40 (D. Kan. 2008), defendant argues that plaintiff's pre-assault heightened risk claim fails as a matter of law because this case does not involve the sort of systemic problems discussed in cases that have recognized such a cause of action.[69]   Observing

---

[66]Plaintiff's Opposition, Docket Entry No. 41, pp. 18-26; Plaintiff's Sur-reply in Opposition to Defendant's Motion for Final Summary Judgment ("Plaintiff's Sur-reply"), Docket Entry No. 47, pp. 11-21.

[67]Plaintiff's Opposition, Docket Entry No. 41, pp. 26-30; Plaintiff's Sur-reply, Docket Entry No. 47, pp. 21-35.

[68]Plaintiff's Original Complaint, Docket Entry No. 1, p. 18 ¶ 90.

[69]Defendant's MSJ, Docket Entry No. 33, p. 32.   <u>See also</u> (continued...)

that Title IX claims based on an alleged deliberate-indifference-to-obvious-need-for-training have only been recognized in circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse, the C.T. court held that in such a case, "the failure amounts to an official policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of the program."   Id.   Asserting that this case does not involve any allegations of sexual misconduct by anyone other than Doe, defendant argues that "this case is properly evaluated under the traditional Davis standard."[70]

Citing Karasek v. Regents of the University of California, 948 F.3d 1150, amended and superceded upon denial of petitions for rehearing and rehearing en banc, 956 F.3d 1093 (9th Cir. 2020), plaintiff argues that "courts do not limit the heightened risk analysis to allegations of a specific problem in a specific program."[71]   Citing Simpson v. University of Colorado Boulder, 500 F.3d 1170 (10th Cir. 2007), plaintiff argues that

---

[69](...continued)
Defendant's Reply in Support of Final Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 45, p. 6 n. 1 ("[T]he District's summary judgment motion argued — correctly, as shown below — that the heightened risk analysis only applies, if at all, in cases where the defendant had actual knowledge of widespread, systemic problems (i.e., actual notice of specific prior incidents of sexual misconduct), and had an official policy of responding with deliberate indifference, thereby creating a heightened risk of sexual assault.").

[70]Id.

[71]Plaintiff's Opposition, Docket Entry No. 41, p. 20.

> [a] funding recipient can be said to have intentionally acted in clear violation of Title IX when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient.[72]

Citing <u>Does 12-15, et al. v. Baylor University,</u> 336 F.Supp.3d 763 (W.D. Tex. 2018), and <u>Does 1-10 v. Baylor University,</u> 240 F.Supp.3d 646 (W.D. Tex. 2017), plaintiff argues that courts within the Fifth Circuit have recognized the viability of pre-assault heightened risk claims.[73]  Plaintiff argues that the evidence in this case supports her claims for heightened risk based on both an official policy of discrimination and pre-assault deliberate indifference.[74]

Defendant replies that <u>Karasek, Simpson,</u> and other cases applying the heightened risk theory of Title IX liability are distinguishable from this case because they all involved allegations of systemic failures on the part of the defendants to reasonably respond to multiple known acts of sexual misconduct. Asserting that this case involves a single incident between two high school students who were otherwise engaged in consensual sexual activity at the time of the assault, defendant argues that the heightened risk theory of liability is inapplicable,[75] and

---

[72]<u>Id.</u>

[73]<u>Id.</u> at 19.

[74]<u>Id.</u> at 18.  <u>See also</u> Plaintiff's Surreply, Docket Entry No. 47, p. 12.

[75]Defendant's Reply in Support of Motion for Final Summary
(continued...)

assuming that it is applicable, that plaintiff has no evidence that an official policy caused her injuries.[76]  In a Supplemental Reply defendant cites the Fifth Circuit's recent opinion in <u>Poloceno v. Dallas Independent School District,</u> 826 F. App'x 359, 363 (5th Cir. 2020), for the statement that "[w]e have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so."[77] Plaintiff argues that <u>Poloceno</u> is inapposite.[78]  Because the claims at issue in <u>Poloceno</u> did not stem from sexual harassment or assault but, instead, from excessive physical exercise, and the Fifth Circuit explained its decision not to recognize the heightened risk theory in that case by stating that "the cases from our sister circuits that recognize the 'heightened risk' analysis limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here," <u>id.,</u> the court concludes that the Fifth Circuit has not foreclosed the possibility of recognizing the heightened risk theory in an appropriate case.  But this is not an appropriate case.

---

[75](...continued)
Judgment, Docket Entry No. 45, pp. 6-14.

[76]<u>Id.</u> at 14-27.

[77]Defendant's Supplemental Reply in Support of Motion for Final Summary Judgment, Docket Entry No. 51, p. 1.

[78]Plaintiffs' Response to Defendant's Supplemental Reply in Support of Motion for Final Summary Judgment Based on New Authority, Docket Entry No. 52.

(a)   Law Applicable to Title IX Heightened Risk Claims

After analyzing the Supreme Court's opinions in Gebser, 118 S. Ct. at 1989, and Davis, 119 S. Ct. 1661, both the Tenth Circuit in Simpson, 500 F.3d at 1170, and the Ninth Circuit in Karasek, 956 F.3d at 1114, have recognized the viability of Title IX claims based on allegations that an official policy heightened the risk that plaintiffs would be sexually harassed or assaulted.

In Simpson a group of female plaintiffs alleged that the University of Colorado Boulder's ("UCB") recruiting efforts included showing football recruits a "good time" by pairing them with female "Ambassadors," and promising at least some recruits an opportunity to have sex.  500 F.3d at 1173.  Following a prior assault, but before the plaintiffs were assaulted, a local district attorney had met with UCB officials to warn them of the risk that sexual assault would occur if recruiting was not adequately supervised.  The district attorney told the officials that UCB needed to implement sexual-assault-prevention training for football players, and needed to develop policies for supervising recruits. Id.  But following the meeting, UCB officials did not heed the warning and "did little to change [UCB's] policies or training." Id.  Instead, "[t]he coaching staff . . . [although] informed of sexual harassment and assault by players, . . . responded in ways that were more likely to encourage than eliminate such misconduct." Id. at 1173-74.  Describing the conduct by UCB officials as

-24-

"sanction[ing], support[ing], even fund[ing], a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts[,]" id. at 1177, the Tenth Circuit concluded that

> a funding recipient can be said to have intentionally acted in clear violation of Title IX, Davis, [119 S. Ct. at 1671], when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient."

Id. at 1178.

In Karasek three plaintiffs asserted an official policy claim based on allegations that the defendant university intentionally avoided Title IX reporting requirements by funneling sexual harassment reports through an informal investigation process.  The Ninth Circuit considered the appropriate elements of such an official policy claim and citing Davis, 119 S. Ct. at 1674-75, held that:

> [A] pre-assault claim should survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school.

956 F.3d at 1112.

Karasek requires the heightened risk to be known or obvious, but does not require the defendant school to have actual knowledge of a particularized risk.  Other courts, however, require defendant

-25-

schools to have actual knowledge of a particularized risk.  For example, district court cases in which Title IX pre-assault heightened risk claims have survived dismissal typically involve allegations that plaintiffs were sexually assaulted, and that the defendant schools knew about the risk of sexual assault from previous assaults but failed to take action to abate the risk.  See e.g., Does I-VIII v. University of Tennessee, 186 F.Supp.3d 788, 792, 794, 804-08 (M.D. Tenn. 2016) (female plaintiffs were sexually assaulted by male student athletes, the university had actual knowledge of previous sexual assaults, but had been covering them up so the athletes could continue to compete); Roskin-Frazee v. Columbia University, No. 17 Civ. 2032 (GBD), 2018 WL 6523721, at *5 (S.D.N.Y. November 26, 2018) ("Pre-assault cases have found that universities may be held responsible for pre-assault deliberate indifference when they have 'actual knowledge of sexual assault(s) committed in a particular context or program or by a particular perpetrator or perpetrators.'") (citation omitted).

The cases within the Fifth Circuit that plaintiff cites as examples of cases that have recognized Title IX pre-assault claims are also based on allegations that the defendant university failed to make any change in the sexually hostile environment of its football program even after receiving numerous, detailed reports of sexual assault by football players. See Does 12-15, 336 F.Supp.3d at 782-83 ("Plaintiffs allege that Baylor, 'its staff, and highest

-26-

officers,' . . . with knowledge of numerous and detailed reports of
sexual assault, . . . 'maintained a set of policies, procedures,
and customs . . . that were implemented in a sexually
discriminatory manner,' and 'permitted a campus condition rife with
sexual assault,' . . . that 'substantially increased Plaintiffs'
chances of being sexually assaulted.' . . . Additionally, despite
being informed of multiple sexual assaults between 2008 and 2011,
Baylor reported to the U.S. Department of Education that no such
assaults took place on its campus during that period. . . . These
alleged facts, construed as true, 'raise a right to relief above
the speculative level' that Baylor's policy or custom of
inadequately handling and even discouraging reports of peer sexual
assault constituted an official policy of discrimination that
created a heightened risk of sexual assault, thereby inflicting the
injury of which Plaintiffs complain."); Does 1-10, 240 F.Supp.3d at
662 ("Plaintiffs allege Baylor and its staff repeatedly misinformed
victims of sexual assault as to their rights under Title IX, . . .
failed to investigate reported sexual assaults, . . . and
discouraged those who reported sexual assaults from naming their
assailants or otherwise coming forward. . . Additionally, despite
being informed of multiple sexual assaults between 2008 and 2011,
the university reported to the U.S. Department of Education that no
such assaults took place on its campus during that period. . .
These alleged facts, if construed as true, could allow a jury to

infer that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which the Plaintiffs complain.").

(b)   Application of the <u>Karasek</u> Factors to the Summary Judgment Evidence

Assuming without deciding that the Fifth Circuit would recognize plaintiff's ability to assert a Title IX claim based on her allegations that CFISD maintained an official policy that created a heightened risk that she would be sexually assaulted, and would adopt the four factors articulated in <u>Karasek</u> for analyzing such claims, the court concludes that CFISD is entitled to summary judgment on plaintiff's pre-assault heightened risk claim because plaintiff has failed to cite evidence capable of raising a genuine issue of material fact as to three of <u>Karasek's</u> four factors.[79]

**(1)   Plaintiff Fails to Raise a Genuine Issue of Material Fact as to Whether CFISD Maintained a Policy of Deliberate Indifference to Reports of Sexual Misconduct**

As evidence that CFISD maintained a policy of deliberate indifference to reports of sexual misconduct in violation of Title IX, plaintiff cites responses that CFISD's witnesses provided

---

[79]There is no dispute that the incidents at issue occurred in a context subject to CFISD's control. <u>Karasek,</u> 956 F.3d at 1112.

-28-

to the question, "What is Title IX?" Plaintiff argues that the
responses to this question by CFISD witnesses show that school
counselors, assistant principals, four CFISD police officers, and
CFISD's Title IX coordinator all lacked a fundamental understanding
of Title IX and the significance of their roles in ensuring CFISD's
compliance with it.[80] But as defendant argues,

> Title IX liability does not turn on whether lay witnesses
> are able to provide legal definitions during their
> depositions, but instead, turns on what information the
> defendant actually had, and what it did (or did not do)
> with that information. Whether witnesses are able to
> attach legal labels or definitions to their duties,
> responsibilities, or actions is irrelevant.[81]

Citing the deposition testimony of Gibson and Godbolt,
plaintiff argues that despite the state mandate to provide training
to staff and awareness education to students and parents regarding
dating violence, Cypress Creek High School's assistant principals
admitted that no training or information regarding dating violence
was provided to students or staff, and that the Student Handbook
contained no reference to dating violence.[82] Plaintiff argues this
evidence shows that

---

[80]Plaintiff's Opposition, Docket Entry No. 41, pp. 21-22.

[81]Defendant's Reply, Docket Entry No. 45, p. 17.

[82]Plaintiff's Opposition, Docket Entry No. 41, pp. 22-23
(citing Gibson Deposition, p. 99:1-14, Exhibit 7 to Plaintiff's
Opposition, Docket Entry No. 42-7, p. 75; and Oral and Videotaped
Deposition of Rashad Godbolt ("Godbolt Deposition"), pp. 71:21-
72:1, Exhibit 8 to Plaintiff's Opposition, Docket Entry No. 42-8,
pp. 44-45).

> [s]even years after the mandate and despite being
> provided a road map and a tool kit from the Texas School
> Safety Center to ensure successful implementation of FFH
> (LOCAL), CFISD intentionally did nothing.  The CFISD
> Board of Trustees approved the dating violence policy but
> the District never took a single step toward implementing
> it.[83]

But the evidence does not support plaintiff's argument.  The

assistant principals did not admit that no training or information

about dating violence was provided to CFISD students or staff, and

undisputed evidence establishes that CFISD not only adopted, but

also disseminated policies prohibiting sex-based discrimination,

including dating violence to students, parents, and staff.[84]  The

question posed to Gibson was not whether any training or

information was provided to staff or students, but whether she was

aware of any publications addressing dating violence other than

CFISD's policies.[85]  Godbolt was asked if dating violence was

referenced in the Student Handbook, but was not asked about Policy

FFH, which is the policy that addresses sexual harassment and

dating violence and is referenced in both the Student Handbook and

the Student Code of Conduct.[86]  Policy FFH (LCOAL) not only defines

---

[83]Plaintiff's Opposition, Docket Entry No. 41, p. 23.

[84]See Sims Declaration, Exhibit 1 to Defendant's MSJ, Docket
Entry No. 33-1, p. 2 ¶¶ 4-5 (citing Exhibit A, policy FFH (LOCAL)).

[85]Gibson Deposition, p. 99:1-14, Exhibit 7 to Plaintiff's
Opposition, Docket Entry No. 41-7, p. 75.

[86]Godbolt Deposition, p. 71:3-20, Exhibit 8 to Plaintiff's
(continued...)

and prohibits dating violence as a type of harassment, but also gives examples of dating violence.[87] Moreover, undisputed evidence establishes that CFISD has adopted and disseminated policies prohibiting sex-based discrimination and harassment against students, including dating violence,[88] made information regarding its policies available both in the Student Handbook and online,[89] and provided annual staff training on sexual harassment.[90]

Citing the deposition testimony of CFISD's Title IX Coordinator, Deborah Stewart, plaintiff argues that CFISD has no discipline code for dating violence or sexual harassment, that sexual misconduct is encompassed in a broader discipline category that includes students pushing each other in the hallway, that determining whether an action involved sexual misconduct requires

---

[86](...continued)
Opposition, Docket Entry No. 41-8, p. 44.

[87]See Policy FFH, Exhibit A to Sims Declaration, Docket Entry No. 34-1, pp. 6 (prohibiting dating violence), and 7 (defining and giving examples of dating violence).

[88]See Sims Declaration, Exhibit 1 to Defendant's MSJ, Docket Entry No. 34-1, p. 4 ¶¶ 4-5.

[89]Id. ¶ 6.  See also CFSID Student Handbook 2013-2014, pp. 41-42, Exhibit 1-C to Defendant's MSJ, Docket Entry No. 34-1, pp. 40-41).

[90]Id. ¶ 7 (citing Exhibit E, training provided to staff members during the 2013-2014 school year, Docket Entry No. 34-1, pp. 105-58; Exhibit F, training on bullying provided at CFISD's 2012 Leadership Conference, Docket Entry No. 34-1, pp. 159-86; and Exhibit G, training provided at CFISD's 2013 Leadership Conference, Docket Entry No. 34-1, pp. 187-215).

reviewing descriptions of conduct for every action coded as "inappropriate contact with peer,"[91] and that the Title IX Coordinator is not notified of any incident of sexual misconduct unless formal disciplinary action is taken.[92] Plaintiff argues that cumulatively, this evidence could lead a reasonable jury to conclude that CFISD is engaged in a record-keeping practice designed to minimize the number of reports of sexual harassment and assault, and to conceal from the public the extent of the problem on its campuses and avoid accountability.[93]

Plaintiff's summary judgment evidence does not raise a genuine issue of material fact as to the existence of any official CFISD policy of deliberate indifference to reports of sexual misconduct. It is undisputed that CFISD's official policies prohibit sex-based discrimination and harassment, including dating violence, and that CFISD's policies are — and were during the 2013-2014 school year — available to staff, students, and parents in the Student Handbook and online.  And contrary to plaintiff's contention that "dating

---

[91]Plaintiff's Opposition, Docket Entry No. 41, pp. 23-24 (citing Oral and Videotaped Deposition of Deborah Stewart ("Stewart Deposition"), pp. 51:20-52:16, Exhibit 15 to Plaintiff's Opposition, Docket Entry No. 42-15, pp. 32-33).

[92]Id. at 23 (citing Steward Deposition, pp. 50:2-52:16, Exhibit 15 to Plaintiff's Opposition, Docket Entry No. 42-15, pp. 31-33).

[93]Id. at 23-24 (citing Stewart Deposition, pp. 51:20-52:16, Exhibit 15 to Plaintiff's Opposition, Docket Entry No. 42-15, pp. 32-33).  See also Plaintiff's Surreply, Docket Entry No. 47, pp. 18-20.

violence is not referenced in the Student Code of Conduct,"[94] the Student Code of Conduct for the 2013-2014 school year both references and defines dating violence.[95] Moreover, any claim that CFISD did not do enough to publicize or to implement its sexual harassment or dating violence policies, or to comply with state or federal guidelines, is not sufficient to establish liability under Title IX. See Gebser, 118 S. Ct. at 2000 ("[Defendant's] failure to comply with the regulations, however, does not establish the requisite actual notice and deliberate indifference. And in any event, the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX. . . . We have never held . . . that the implied right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.").

---

[94]Id. at 23.

[95]Student Code of Conduct, Exhibit D to Sims Declaration, Docket Entry No. 34-1, pp. 54 (CFISD-ROE 000265)("Students shall not: . . . 9. engage in conduct that constitutes dating violence (see glossary); p. 100 (CFISD-ROE 000311) ("Dating Violence occurs when a person in a current or past dating relationship uses physical, sexual, verbal, or emotional abuse to harm, threaten, intimidate, or control another person in the relationship. Dating violence also occurs when a person commits these acts against a person in a marriage or dating relationship with the individual who is or was once in a marriage or dating relationship with the person committing the offense, as defined by Section 71.0021 of the Family Code.").

-33-

**(2)   Plaintiff Fails to Raise a Genuine Issue of Material Fact as to Whether CFISD Maintained a Policy that Created a Heightened Risk of Sexual Harassment that Was Known or Obvious**

Asserting that CFISD's discovery responses indicate there were no incidents recorded as dating violence, sexual harassment, or sexual assault at Cypress Creek High School for the school years 2012-2013 through 2016-2017, plaintiff argues that Gibson and CFISD police officers recall otherwise.   As evidence that sexual misconduct was a district-wide issue, plaintiff cites Assistant Principal Gibson's testimony that she investigated four incidents while she was at Cypress Creek High School in 2012-2013 and 2013-2014, that the incidents involved students in current or former dating relationships, and included claims of "inappropriate touching" as well as "grabbing and confining to areas."[96]  Plaintiff cites the testimony of CFISD Police Officer Cedric Nolly who recalled that another female student in addition to the plaintiff reported that she was sexually assaulted on the Cypress Creek campus in 2013-2014.[97]  Plaintiff also cites the testimony of CFISD police officer Patrick Arnett who estimated there to be two sexual assaults per year district-wide.[98]  As evidence that sex in the

---

[96]Plaintiff's Opposition, Docket Entry No. 41, p. 25 (citing Gibson Deposition, pp. 90:8-92:23, Exhibit 7 to Plaintiff's Opposition, Docket Entry No. 42-7, pp. 66-68).

[97]Id. (citing Oral and Videotaped Deposition of Cedric Nolly ("Nolly Deposition"), pp. 25:15-28:2, Exhibit 10 to Plaintiff's Opposition, Docket Entry No. 42-10, pp. 8-11).

[98]Id. at 25-26 (citing Oral and Videotaped Deposition of (continued...)

stairwells was both common and overlooked, plaintiff cites the testimony of CFISD police officers Mitchell and Arnett, and Cypress Creek High School counselor Karen Clarkson.[99]

Plaintiff argues that "[b]ased on this cumulative evidence, a reasonable jury could find that CFISD's actions created a heightened risk that [her] injuries would occur."[100]   Plaintiff also argues that this evidence shows that CFISD acted with deliberate indifference to the known risk of dating violence and

---

[98](...continued)
Patrick Arnett, p. 25:2-14, Exhibit 11 to Plaintiff's Opposition, Docket Entry No. 42-11, p. 5).  Plaintiff also cites the deposition testimony of CFISD police officer Jimmy Banks, but did not provide the referenced pages in the exhibit filed with the court.  See Oral and Videotaped Deposition of Jimmy Banks, pp. 11:20-12:15, Exhibit 12 to Plaintiff's Opposition, Docket Entry No. 42-12, not included in the exhibit filed with the court).

[99]Id. at 26 (citing Mitchell Deposition, p. 20:1-6, Exhibit 9 to Plaintiff's Opposition, Docket Entry No. 42-9, p. 4; Arnett Deposition, pp. 47:16-48:23, Exhibit 11 to Plaintiff's Opposition, Docket Entry No. 42-11, pp. 18-19; and Oral and Videotaped Deposition of Karen Clarkson ("Clarkson Deposition"), p. 14:14-19, Exhibit 14 to Plaintiff's Opposition, Docket Entry No. 42-14, p. 5).  Plaintiff also cites her own declaration as evidence that sex in the stairwells at Cypress Creek High School was so common that it has become the school's stereotype among students — so much so that it made it into a local comedian's Instagram account.  See Id. (citing Madison Smith Declaration, Docket Entry No. 42-1, pp. 3-4 ¶¶ 12-13A).  Defendant objects to the comedian's Instagram posting as inadmissible hearsay, see Defendant's Reply, Docket Entry No. 45, p. 19 n. 9.  Plaintiff has not responded to defendant's objection, and the court agrees that the Instagram posting is inadmissible hearsay.  Accordingly, defendant's objection to the Instagram posting is **SUSTAINED.**

[100]Id.

sexual assault on its campuses, specifically at Cypress Creek High School.

But, again, the evidence does not support plaintiff's argument. Although the witnesses whose testimony plaintiff cites testified that students went to the stairwells to do things that they should not be doing, none of the witnesses testified that they knew students used the stairwells to engage in sexual conduct. For example, Mitchell testified:

> Q.   Were there areas in the school that you were aware of that kids went to do things that kids shouldn't be doing at school?
>
> A.   I would have to say that could be pretty much all staircase -- staircase, stairwells.[101]

Clarkson testified that students were frequently caught in the stairwells, but she did not testify that students were frequently caught engaging in sexual conduct in the stairwells:

> Q.   No[w], that you said -- you started to say, "We had another," and I -- you were about to say -- were saying a situation where kids were caught in the stairwell?
>
> A.   We have kids caught in the stairwell, not frequently, but from time to time.
>
> Q.   And I'm gathering it's because stairwells are a place where students can go and do whatever they might should not be doing and go undetected?

---

[101]Mitchell Deposition, p. 20:1-6, Exhibit 9 to Plaintiff's Opposition, Docket Entry No. 42-9, p. 4.

A.    There are 38 stairwells in my building, 38.[102]

Officer Arnett testified that he knew students would use the stairwells to do things that they were not supposed to be doing at school, but he also testified that he never encountered students engaged in sexual activity in the stairwells:

> Q.    At Cy-Creek, when you were there, were there areas of the campus that kids were known to go to do things that they shouldn't at school, like anything that would be a violation of the code of conduct, like smoking?
>
> A.    Yeah, kids being kids, dug outs in the baseball field, like any other school. We know from working a campus where you normally have your common problems. In the cars, we try to look for kids loitering and hanging out in the cars. You just -- just where a kid would, you know, where -- if I wanted to hide, where would I hide?
>
> Q.    What about the stairwells?
>
> A.    Yea, kids going into the stairwells. I mean, kids -- it's just, we -- we check the bathrooms. Kids hang -- we'll knock on the bathroom, go in the bathrooms, guys bathrooms, guys hang out in the bathrooms. Sometimes they try to smoke in the bathrooms. So, you know those areas, but, you know, they're in all of these -- they -- they go in all these areas. They are just kids being kids.
>
> Q.    Were you -- did you ever encounter any kids making out or --
>
> A.    Yes.
>
> Q.    -- engaged in sexual activity in the stairwells?
>
> A.    No, not in the stairwells, but I've seen kids trying to get it on in the car or you catch them

---

[102]Clarkson Deposition, p. 14:14-19, Exhibit 14 to Plaintiff's Opposition, Docket Entry No. 42-14, p. 5.

out in the backstop.  You might not catch them
doing nothing in the dug out, but you just say you-
all aren't supposed to be out here, you know, let's
get to class, you take the information.  Normally,
when they're out of place like that, they give them
Saturday school.[103]

Plaintiff alleges that CFISD failed to provide adequate training on preventing sexual assault and teen dating violence at Cypress Creek High School, but noticeably absent from plaintiff's briefing and exhibits is any assertion or evidence that school officials had notice of previous sexual assaults.  Instead, plaintiff merely argues that school officials were on notice that teen dating violence and sexual assault were concerns for all high schools and that CFISD was deliberately indifferent to the need for proper training.  But even accepting plaintiff's allegations as true and viewing the summary judgment record in the light most favorable to her, the facts of this case do not fall within the framework of either the Tenth Circuit's holding in <u>Simpson,</u> or the Ninth Circuit's holding in <u>Karasek.</u>  The deliberate indifference to obvious need for training standard adopted by those courts is confined to circumstances where the need for training or guidance is obvious due to numerous instances of sexual misconduct.  In that situation the failure amounts to an official policy of deliberate indifference to providing adequate training or guidance that is obviously necessary.  Here, the only concrete incidence of sexual

---

[103]Arnett Deposition, pp. 47:16-48:23, Exhibit 11 to Plaintiff's Opposition, Docket Entry No. 42-11, pp. 18-19;

assault that plaintiff cites is the assault that she suffered at
the hands of her boyfriend.   The other allegations of sexual
misconduct to which the CFISD witnesses testified are too vague,
abstract, and unmoored in time to create a genuine issue of
material fact regarding the existence of a systemic problem either
at Cypress Creek High School in particular or at CFISD in general.
Viewing the facts in alight most favorable to plaintiff, the
incidents to which CFISD's witnesses testified during their
depositions do not rise to the level of egregiousness and actual
notice required by Simpson, or to the level of obviousness required
by Karasek.   As defendant argues, "[e]stablishing a material fact
issue as to the existence of a widespread, systemic problem in such
a large school district surely requires more than a small handful
of vague allegations about isolated and unrelated incidents."[104]

> **(3)   Plaintiff Fails to Raise a Genuine Issue of
> Material Fact as to Whether CFISD Maintained a
> Policy that Caused Her to Suffer the Sexual
> Assault that Occurred**

Even assuming that plaintiff's evidence was capable of raising
genuine issues of material fact as to whether CFISD maintained an
official policy of deliberate indifference towards known acts of
sexual misconduct, she neither argues nor cites any evidence
capable of establishing that any such policy caused her injuries.

---

[104]Defendant's Reply, Docket Entry No. 45, p. 8.

The summary judgment evidence — including plaintiff's own admissions — shows that despite having been instructed by her mother and the school counselor to stay away from Doe, she ignored those instructions and voluntarily entered the stairwell with Doe for the express purpose of engaging in the sexual activity that lead to her injury. Even if CFISD maintained a policy of deliberate indifference to reports of sexual misconduct, no reasonable jury could conclude that policy caused plaintiff's injuries.

### (c)   Conclusions

Because plaintiff has failed to raise genuine issues of material fact on three of the four <u>Karasek</u> factors that courts apply to Title IX pre-assault heightened risk claims, the court concludes that the CFISD is entitled to summary judgment on plaintiff's claim that an official CFISD policy created a heightened risk that she suffer the sexual assault that occurred.

### 2.   <u>Plaintiff Fails to Cite Evidence Raising a Genuine Issue of Material Fact as to Her Post-Assault Claims</u>

Plaintiff alleges that CFISD is liable under Title IX for her post-assault claims because

> [o]ne or more CFISD administrators or officials, with authority to take corrective action on [her] behalf, had actual notice of the sexual assault, harassment and discrimination and failed to adequately respond, in violation of their own policies. Those failures amounted to deliberate indifference toward the unlawful sexual conduct and retaliatory conduct that had occurred, was

-40-

occurring, or was likely to occur. The District's action
— and inaction — was clearly unreasonable. As a result,
[plaintiff] was subject to continuing harassment and a
loss of educational opportunities.[105]

To prove her post-assault Title IX claims, plaintiff must

establish that CFISD

(1) had actual knowledge of the harassment, (2) the
harasser was under the district's control, (3) the
harassment was based on the victim's sex, (4) the
harassment was so severe, pervasive, and objectively
offensive that it effectively barred the victim's access
to an educational opportunity or benefit, and (5) the
district was deliberately indifferent to the harassment.

I.L., 776 F. App'x at 842. The only factor in dispute is whether

CFISD responded with deliberate indifference to plaintiff's assault

and post-assault harassment.

Plaintiff argues that CFISD's response to her assault was

clearly unreasonable because it should have done more to

investigate her complaint of sexual assault, and should have been

more responsive to her mother's concerns. Plaintiff also argues

that the facts surrounding CFISD's investigation — or lack thereof

— are substantially disputed.[106] But neither failing to investigate

nor failing to respond to acts of sexual harassment to a

complainant's liking is sufficient to impose liability under Title

IX. CFISD was not required to provide plaintiff with her chosen

remedy. Courts have repeatedly held that "schools are not required

---

[105]Plaintiff's Original Complaint, Docket Entry No. 1, p. 17
¶ 82.

[106]Plaintiff's Opposition, Docket Entry No. 41, pp. 28-29.

to remedy the harassment or accede to a parent's remedial demands,"
and that "courts should refrain from second-guessing the
disciplinary decisions made by school administrators." Sanches,
647 F.3d at 167-68 (citing Davis, 119 S. Ct. at 1673-74). CFISD
might have suspended or expelled Doe, but the law does not require
that response in order to avert Title IX liability. See Davis,
119 S. Ct. at 1673-74 ("We stress that our conclusion here — that
recipients may be liable for their deliberate indifference to known
acts of peer sexual harassment — does not mean that recipients can
avoid liability only by purging their schools of actionable peer
harassment or that administrators must engage in particular
disciplinary action.").

Moreover, plaintiff ignores the undisputed evidence showing
what CFISD did do. CFISD police officers immediately responded to
the report of assault made from the hospital, and passed their
report onto the HCSO's, which investigated the assault. Following
the HCSO's investigation, the Harris County District Attorney's
Office refused to accept charges against Doe. Assistant Principal
Gibson searched for and reviewed video evidence, which showed
plaintiff and Doe walking arm-in-arm in the hall. Based on the
evidence available to her, Gibson concluded that the assault
resulted from a consensual encounter that went too far. Even if
the school's investigative and disciplinary response could have
been better, neither "negligence nor mere unreasonableness is

-42-

enough" to support a Title IX deliberate indifference claim.  I.L.,
776 F. App'x at 842 (quoting Sanches, 647 F.3d at 167).

This case involves a single incident of sexual assault on a
school campus.  Plaintiff does not allege or cite any evidence
showing that CFISD knew of any prior sexual assaults or harassment
by Doe or anyone else.  Although plaintiff complains that when she
returned to school after the assault, Does' friends harassed her at
school by confronting her once in the bathroom, and by calling her
offensive names such as "baby killer" in social media posts,
plaintiff does not cite any evidence showing that Doe harassed her
or that he spoke to her more than once when they exchanged angry
words following a chance encounter that Doe had with plaintiff's
mother and boyfriend at a grocery store.  To the contrary,
plaintiff's mother stated in her declaration that following the
assault plaintiff had no classes with Doe, but did have the same
lunch period.[107]  Nor does plaintiff cite any evidence showing that
she or her mother ever notified school administrators about the
harassment she experienced from Does' friends, or that she or her
mother disclosed the identities of the people who were harassing
her or specifics about the harassment that she was experiencing.
Because the deliberate indifference inquiry focuses on the school's
response to known harassment, the response must be so deficient as
to itself constitute harassment.  No reasonable jury could conclude

---

[107]Lauren Smith Declaration, Docket Entry No. 42-2, p. 7 ¶ 38.

that the school's responsiveness was clearly unreasonable under the circumstances.

Plaintiff argues that summary judgment should be denied because of factual discrepancies between CFISD's answers to interrogatories regarding its investigation of her assault and Gibson's testimony regarding that same investigation — i.e., whether Gibson spoke with or obtained written statements from plaintiff and Doe, whether Gibson kept notes or drafted a written summary or conclusion of the investigation, whether CFISD possessed or disclosed all of the video evidence, and the basis on which Gibson concluded the sexual conduct at issue was consensual. But these factual disputes are immaterial to whether the school's response was clearly unreasonable as a matter of law.

Whether the assault was actually consensual is not relevant. The relevant issue is whether the school acted with deliberate indifference to plaintiff's complaint of sexual assault, consensual or not. In this case, where there was evidence that the incident may have been consensual, plaintiff's mother made it clear to Gibson that she intended to pursue criminal charges against Doe,[108] and where there was a potential for criminal charges, it was not clearly unreasonable for the school to rely on the investigative expertise of a law enforcement agency such as the Harris County Sheriff's Office. The court's analysis does not presume that the

_____

[108] Id. at 6 ¶ 28.

act was consensual, but instead, gauges the school's response to a factually complex situation.  The Texas Family Code § 261.103(a)(1) allows a report of child abuse to be made to a local law enforcement agency such as the Harris County Sheriff's Office.

The discrepancies between CFISD's answers to interrogatories and Gibson's description of the investigation she conducted do not foreclose summary judgment.  Even when viewed in the light most favorable to the plaintiff, these discrepancies are insufficient to establish that CFISD possessed any knowledge that might have rendered its response deliberately indifferent.  Plaintiff argues that the school was deliberately indifferent to her emotional and physical health problems, which she contends resulted from the assault, but the cited testimony is vague and establishes only that plaintiffs' mother notified Cypress Creek High School that plaintiff did not feel comfortable at school.  The vague communications that plaintiff's mother had with the assistant principal and with plaintiff's counselor at Cypress Creek High School raise no genuine, material issues as to whether CFISD responded with deliberate indifference to plaintiff's condition following the assault.

The conclusion that plaintiffs' evidence does not raise genuine issues of material fact for trial is supported by decisions in other courts arising from similar facts.  In <u>Gabrielle M. v. Park Forest-Chicago Heights, Illinois School District 163</u>, 315 F.3d

-45-

817 (7th Cir. 2003), the court rejected the plaintiff's argument that a school's response to peer harassment was clearly unreasonable because the school was unsuccessful in preventing future harassment.  The court explained that

> in arguing that in order not to act with deliberate indifference, the school district must have effectively ended all interaction between the two students to prevent conclusively any further harassment, Gabrielle misunderstands the law. <u>Davis</u> does not require funding recipients to remedy peer harassment. . . <u>Davis</u> disapproved of a standard that would force funding recipients to suspend or expel every student accused of misconduct. []  All that <u>Davis</u> requires is that the school not act <u>clearly unreasonably</u> in response to known instances of harassment.

<u>Id.</u> at 825.  <u>See also M.D. v. Bowling Green Independent School District,</u> 709 F. App'x 775 (6th Cir. 2017) (finding no Title IX liability following a sexual assault because the defendant school district prevented the male student offender from further harassing the female student victim even though the offender was allowed to return to campus, the two students shared the same lunch period, and they continued to see each other daily).  The court does not minimize the consequences to plaintiff and to her well being that resulted from the assault.  But based on the law applicable to recipients of federal funding, and the facts established by the summary judgment record, no reasonable jury could conclude that CFISD exhibited deliberate indifference in responding either to the assault or to the alleged post-assault harassment.

## V.   Conclusions and Order

For the reasons stated in § III, above, Plaintiff's Motion to File Sur-Reply in Opposition to Defendant's Motion for Final Summary Judgment, Docket Entry No. 47, is **GRANTED**.

For the reasons stated in § IV, above, Defendant's Motion for Final Summary Judgment, Docket Entry No. 33, is **GRANTED**.

Because the court has been able to rule on Defendant's Motion for Final Summary Judgment without considering Geffner's testimony, Defendant's Motion to Exclude Testimony of Robert Geffner, PhD, Docket Entry No. 35, is **DENIED as MOOT**.

**SIGNED** at Houston, Texas, on this the 20th day of November, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE