United States District Court
Southern District of Texas
**ENTERED**
June 13, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2850 |
| | § | |
| CYPRESS-FAIRBANKS INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jane Roe, is pursuing a claim against defendant, Cypress-Fairbanks Independent School District ("CFISD") for violating Title IX of the Education Act of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq., by responding with deliberate indifference to a sexual assault that she suffered on a CFISD campus at the hands of a fellow student in March of 2014 during her freshman year of high school.[1]  Pending before the court is Defendant's Motion for Summary Judgment on Damages ("Defendant's MSJ") (Docket Entry No. 96), in which CFISD moves the court for judgment as a matter of law and asks the court to strike testimony of Roe's damage experts. Also pending are Plaintiff Jane Roe's Motion to Strike Expert Designation and Exclude Testimony of Mia M. Martin and Request for Sanctions ("Plaintiff's Motion to Strike and Exclude Martin Testimony") (Docket Entry No. 100), and Plaintiff Jane Roe's Motion

---

[1]Plaintiff's First Amended Complaint and Jury Demand ("Plaintiff's First Amended Complaint"), Docket Entry No. 84, pp. 9-19 ¶¶ 36-95.  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

to Strike Expert Designation and Exclude Testimony of Virginia V. Flores ("Plaintiff's Motion to Strike and Exclude Flores Testimony") (Docket Entry No. 102).  For the reasons stated below Defendant's MSJ will be granted with respect to Roe's claims for loss of past and future earnings and earning capacity, and for the cost of a college education, and denied with respect to Roe's claims for loss of educational opportunities and benefits. Defendant's request to strike the testimony of Roe's damage experts will be granted in part and denied in part, Plaintiff's motion to strike the designation and exclude the testimony of Virginia V. Flores will be granted, Plaintiff's motion to strike the designation and exclude the testimony of Mia M. Martin will be granted, and Plaintiff's motion for sanctions will be denied.

## I. **Background**

This case arises from Roe's brutal sexual assault by a fellow student at Cypress Creek High School in March of 2014 when she was a fourteen year old freshman.  Roe alleges that after reporting the assault, the severity of her injuries, and subsequent harassment to CFISD, CFISD failed to investigate or to provide her support, and ultimately recommended that she drop out of school, which she did in March of 2016 as a seventeen year old junior.[2]  In November of

---

[2]The factual background has been recounted in previously issued Memorandum Opinions and Orders.  See e.g., Docket Entry Nos. 55, pp. 3-14, and 83, pp. 2-10.  See also Defendant's MSJ, Docket Entry No. 96, pp. 11-15, and Plaintiff Jane Roe's Response
(continued...)

2016 Roe obtained her general education development (GED) certificate.[3]

After achieving the age of majority, Roe filed her Original Complaint alleging that CFISD violated Title IX by (1) maintaining policies, practices, and customs that created a heightened risk she would be assaulted; (2) exhibiting deliberate indifference to warning signs that she would be assaulted; and (3) responding to her sexual assault with deliberate indifference.[4] Roe also asserted a claim under 42 U.S.C. § 1983 alleging that CFISD violated the Equal Protection Clause of the Fourteenth Amendment by maintaining policies that exhibited deliberate indifference to her constitutional rights.[5] Roe sought <u>inter alia</u> declaratory relief and compensatory damages for emotional distress.[6]   The court

---

[2](...continued)
in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response to Defendant's MSJ"), Docket Entry No. 98, pp. 6-11.

[3]<u>See</u> Employability Assessment prepared by Reg L. Gibbs ("Gibbs Report"), p. 4, Exhibit J to Defendant's MSJ, Docket Entry No. 97-10, p. 7 (citing Testimony of Roe, September 23, 2019, p. 8:10-13). The Gibbs Report also appears in the record as Exhibit B to Plaintiff's Response to Defendant's MSJ, Docket Entry No. 99, pp. 21-42.  For the sake of consistency all references to this report will be to the first-filed version, Docket Entry No. 97-10.

[4]Plaintiff's Complaint, Docket Entry No. 1, pp. 16-18 ¶¶ 81-92.

[5]<u>Id.</u> at 18-21 ¶¶ 93-106.

[6]<u>Id.</u> at 21 ¶ 107.

granted CFISD's motion to dismiss Roe's § 1983 claim,[7] and later granted CFISD's motion for summary judgment on her Title IX claims.[8]  Roe did not appeal the dismissal of her § 1983 claim, but did appeal the grant of summary judgment on her Title IX claims. The Fifth Circuit affirmed the court's grant of summary judgment on Roe's pre-assault Title IX claims but reversed summary judgment on her post-assault Title IX claim, holding that

> [t]he totality of the circumstances, including the District's lack of investigation, awareness of the pre-assault abusive relationship, failure to prevent in-person and cyber-attacks from Doe and other students post-assault, and failure to provide any academic or other appropriate support to Roe, culminated in exactly what Title IX is designed to prevent — the tragedy of Roe dropping out of school.  A reasonable jury could find that the District violated Title IX based on these facts.

Roe v. Cypress-Fairbanks Independent School District, 53 F.4th 334, 342 (5th Cir. 2022), cert. denied, 144 S. Ct. 1002 (2024).

While Roe's appeal was pending before the Fifth Circuit, the Supreme Court issued an opinion holding that emotional distress damages are not available under federal Spending Clause statutes. See Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1576 (2022).  Following the Supreme Court's denial of CFISD's Petition for Writ of Certiorari, the parties submitted a Joint Status Report (Docket Entry No. 74), agreeing that Cummings impacted the damages available to Roe under Title IX but

---

[7]Memorandum Opinion and Order, Docket Entry No. 14.

[8]Amended Memorandum Opinion and Order, Docket Entry No. 55.

disagreeing about the extent of the impact.  On May 16, 2024, the court entered a Memorandum Opinion and Order (Docket Entry No. 83), granting Roe's Motion for Leave to Amend Plaintiff's Original Complaint Regarding Damages (Docket Entry No. 78), and setting deadlines for the parties to designate new damage experts and produce reports, and for CFISD to file a motion for summary judgment on damages or advise the court that it would not file such a motion.  On May 21, 2024, Roe filed Plaintiff's First Amended Complaint and Jury Demand (Docket Entry No. 84).  On June 4, 2024, CFISD filed Defendant's Motion for Partial Dismissal of Roe's First Amended Complaint (Docket Entry No. 85).  On July 8, 2024, Roe designated damages experts.[9]  On August 9, 2024, the court entered a Memorandum Opinion and Order (Docket Entry No. 92) denying as moot CFISD's motion to partially dismiss Roe's amended complaint, and holding that the only live claim in this action is Roe's Title IX claim for post-assault deliberate indifference.  On August 23, 2024, the court entered an Order Extending Deadlines Related to Damages (Docket Entry No. 94), extending the deadlines for CFISD to designate "any expert of damages" to September 30, 2024, and to file a summary judgment motion on damages to October 7, 2024.  On September 30, 2024, CFISD designated damages experts,[10] and on October 7, 2024, CFISD filed the pending MSJ.

---

[9]Notice of Disclosure under Fed. R. Civ. P. 26(a)(2), Docket Entry No. 91.

[10]Defendant's Certification of Expert Witnesses, Docket Entry No. 95.

## II. CFISD's Motion for Summary Judgment

Roe's amended complaint seeks <u>inter alia</u> nominal and compensatory damages in an amount to be determined at trial.[11]   In pertinent part Roe alleges:

82. As a result of Defendant's actions and inaction related to dating violence, Roe's sexual assault, and as a result of her ongoing harassment by Perpetrator and his proxies, Roe was deprived of a multitude of educational opportunities and/or benefits provided by CFISD, including but not limited to:

   • academic instruction and support

   • career and technical education opportunities

   • athletics

   • extracurricular activities

   • counseling and mental health services

   • complaint procedures[.]

83. The deprivation of educational opportunities and benefits Roe suffered caused her economic loss, including but not limited to costs associated with remedial education, loss of earnings and diminished earning capacity.[12]

## A.   New Evidence

After Roe filed her First Amended Complaint she engaged three damages experts to help prove her economic losses: Kimberly J. Vannest, Ph.D. ("Vannest"), an educator; Reg Gibbs, MS ("Gibbs"), a vocational rehabilitation expert; and Thomas Roney

---

[11]Plaintiff's First Amended Complaint, Docket Entry No. 84, p. 23.

[12]<u>Id.</u> at 17 ¶¶ 82-83.

("Roney"), an economist.[13]  Roe engaged Vannest to "identify[] the relevant 'educational opportunities' and 'benefits' required to be provided to students in Texas public schools generally and CFISD specifically and to explain the impact on students who are deprived of these opportunities and benefits."[14]  Vannest concluded that

> CFISD knew from repeated indicators that Jane Roe was in need of help and at risk for harm.  CFISD had multiple federal, state, and local policies in place to address these needs and prevent harm.  CFISD did not implement these required safety-relevant and gender-discrimination policies.  As a result, Ms. Roe experienced harm that prevented access to educational opportunities, services, and benefits, pushing Ms. Roe out of High School, and ultimately resulting in Ms. Roe dropping out.[15]

Roe engaged Gibbs to conduct an employability assessment.[16]  Absent Roe's alleged injury, Gibbs "envisioned two scenarios for how [her] future would have unfolded."[17]  In the first scenario, Roe "would have followed the example of her parents and earned a high

---

[13]See Plaintiff's Expert Disclosures, pp. 1-3, Exhibit A to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 101, pp. 3-5.

[14]Expert Opinion of Kimberly J. Vannest, PhD. ("Vannest Report"), p. 3, Exhibit I to Defendant's MSJ, Docket Entry No. 97-9, p. 4.  The Vannest Report also appears in the record as Exhibit A to Plaintiff's Response to Defendant's MSJ, Docket Entry No. 99, pp. 3-15, and as Exhibit D Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 101, pp. 33-45.  For the sake of consistency all references to this report will be to the first-filed version, Docket Entry No. 97-9.

[15]Id. at 3, Docket Entry No. 97-9, p. 4.

[16]Gibbs' Report, p. 1, Docket Entry No. 97-10, p. 4.

[17]Id. at 11, Docket Entry No. 97-10, p. 14.

-7-

school diploma.  She would have made a transition to [the] labor force, earning an income commensurate with her educational level."[18]  In the second scenario, Roe "would have capitalized on her athletic ability and secured a scholarship in volleyball or softball, facilitating her earning of either an associate or a baccalaureate degree from a university.  These achievements would have led to higher earnings than in Scenario One."[19]  Gibbs states that

> [a]ccording to the U.S. Department of Labor, the average annual earnings of females aged twenty-five and above were as follows in 2023:
>
> - Less than a high school diploma: $32,188
>
> - High School diploma: $40,040
>
> - Associate degree: $46,540
>
> - Baccalaureate degree: $68.536[.][20]

Gibbs opines that Roe

> was deprived of the opportunity to obtain an athletic scholarship, which has led to a significant alteration in her educational journey.  Without further education, she faces the prospect of continued work at entry-level jobs accessible to someone with a GED only for the remainder of her work life.  The consequent wage loss can be calculated by comparing the amount that she might have earned with an associate or baccalaureate degree to her earning potential with a GED only.[21]

---

[18] Id.

[19] Id.

[20] Id.

[21] Id.

-8-

Gibbs also opines that "[s]hould [Roe] decide now to pursue higher education without a scholarship, she will bear the financial responsibility for her studies.  The cost associated with such a decision can be estimated using current tuition and fee data from Texas educational institutions,"[22] and that it would now cost Roe $7,160 to obtain an associate degree from a community college; $21,200 to obtain an associate degree from a Texas university; or $42,400 to obtain a baccalaureate degree.[23]

Roney is a consulting economist.  Roe engaged Roney "to determine the economic damages suffered by [Roe]."[24]  Based on Gibbs' assessment of Roe's employability, Roney concluded that "[t]he present value of [Roe's] past and future loss of earnings is $120,461.00 if she attains a high school diploma, $529,158.00 if she earns an associate's degree, and $1,074,761.00 if she obtains a bachelor's degree."[25]

---

[22]Id.

[23]Id. at 11-12, Docket Entry No. 97-10, pp. 14-15.

[24]Assessment of Economic Loss in the Matter of [Jane Roe] ("Roney Report"), p. 1, Exhibit K to Defendant's MSJ, Docket Entry No. 97-11, p. 2.  The Roney Report also appears in the record as Exhibit C to Plaintiff's Response to Defendant's MSJ, Docket Entry No. 99, pp. 44-57.  For the sake of consistency all references to this report will be to the first-filed version, Docket Entry No. 97-11.

[25]Id. at 8, Docket Entry No. 97-11, p. 9.  See also id. at 10, Docket Entry No. 97-11, p. 11 (showing calculations).

**B.    Applicable Law**

Title IX provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Although Title IX has no express remedies, in Cannon v. University of Chicago, 99 S. Ct. 1946, 1952 and 1967 (1979), the Supreme Court held that it encompasses an implied right of private action.  In Franklin v. Gwinnett County Public Schools, 112 S. Ct. 1028, 1038 (1992), the Court held that plaintiffs can recover both monetary damages and equitable relief for intentional violations of Title IX.  Because Title IX invokes Congress's power to place conditions on the grant of federal funds provided by the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, the Court has characterized Title IX and other Spending Clause statutes as "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions."  Davis v. Monroe County Board of Education, 119 S. Ct. 1661, 1670 (1999).  The Court has also held that "Title IX's contractual nature has implications for . . . the scope of available remedies."  Gebser v. Lago Vista Independent School District, 118 S. Ct. 1989, 1998 (1998).  In  Barnes v. Gorman, 122 S. Ct. 2097, 2101-02 (2002), the Court observed — in the context of another Spending Clause statute — that "[o]ne of these implications . . . is that a remedy is 'appropriate relief'

-10-

. . . only if the funding recipient is <u>on notice</u> that, by accepting federal funding, it exposes itself to liability of that nature." In <u>Cummings</u>, 142 S. Ct. at 1569-71, the Court held that remedies available for violation of two other Spending Clause statutes, <u>i.e.</u> § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and § 1557 of the Patient Protection and the Affordable Care Act ("ACA"), 42 U.S.C. § 18116, do not include damages for emotional distress.  Reasoning that a Spending Clause funding recipient is only subject to "those remedies traditionally available in suits for breach of contract," <u>id.</u> at 1571, the Court explained that because emotional distress damages are not traditionally available in breach of contract actions, federal funding recipients would not have clear notice of their potential liability for emotional damages when they were deciding whether they should accept federal dollars.  <u>Id.</u> at 1572-74 (citations omitted).  The Court instructed lower courts deciding whether a specific category of damages is available under a Spending Clause statute, to consider whether "a prospective funding recipient, at the time it 'engaged in the process of deciding whether [to] accept' federal dollars, [would] have been aware that it would face such liability?" <u>Id.</u> at 1570-71.  District courts in this circuit apply <u>Cummings</u> to Title IX claims.  <u>See</u> <u>e.g.</u>, <u>McGowan v. Southern Methodist University</u>, 715 F. Supp. 3d 937, 955 (N.D. Tex. 2024); <u>Doe v. University of Mississippi</u>, No. 3:18-cv-138-DJP-ASH, 2024 WL 3011133, at *3 (S.D. Miss. June 14, 2024).

## C.  Application of the Law to the New Facts

Asserting that "the only economic damages that Roe has disclosed (or attempted to prove) are highly speculative losses associated with her claimed inability to obtain a college scholarship, and her past and future earning capacity,"[26] CFISD argues that it is entitled to summary judgment on Roe's damage claims because "the resulting economic damages she claims to have suffered cannot be recovered as a matter of law."[27]  Relying primarily on B.R. v. F.C.S.B., 718 F. Supp. 3d 504 (E.D. Va. 2024), University of Mississippi, 2024 WL 3011133, and Doe v. Fairfax County School Board, No. 1:18-cv-614, 2023 WL 424265 (E.D. Va. January 25, 2023), CFISD argues that

> [t]he claim that Roe would have obtained a full athletic scholarship, simply because she participated in athletics as a freshman in high school, is too speculative and attenuated to survive summary judgment, and Roe also cannot demonstrate that the District's response to the alleged assault proximately caused this alleged injury.[28]

CFISD argues that "Roe's claims for loss of past and future earnings and diminished earning capacity are too speculative and attenuated to justify relief, and Roe lacks any evidence of but-for causation."[29]  Acknowledging that Roe is "seeking compensatory damages, declaratory relief, and nominal damages," CFISD moves the

---

[26]Defendant's MSJ, Docket Entry No. 96, p. 6.

[27]Id.

[28]Id. at 22.

[29]Id. at 27.

court for judgment as a matter of law on all of Roe's damage claims arguing that "Roe is not entitled to present either damages theory to a jury."[30]

Quoting Davis, 119 S. Ct. at 1675, for stating that "students must not be denied access to educational benefits and opportunities on the basis of gender," Roe responds she has alleged that she "was deprived of a multitude of educational opportunities and benefits provided by CFISD,"[31] on which her education expert, Vannest elaborated.[32]    Citing Montgomery v. District of Columbia, No. 18-1928 (JDB), 2022 WL 1618741, at *25 (D.D.C. May 23, 2022), Roe argues that post-Cummings, courts "have analogized 'loss of opportunity' to 'benefit of the bargain,'" and have recognized that "[q]uantifying the value of loss of opportunity is a task more appropriately performed by a jury after trial than by a court on summary judgment."[33]    Roe also argues that she "may recover damages that are consequences of or result from the lost educational opportunities and benefits," and that "[l]oss of earning capacity is one of those consequences."[34]

---

[30]Id. at 30.

[31]Plaintiff's Response to Defendant's MSJ, Docket Entry No. 98, pp. 13-14.

[32]Id. at 14-17 (citing Vannest Report, pp. 9-13, Docket Entry No. 97-9, pp. 10-14).

[33]Id. at 18.

[34]Id. at 19.

1.  <u>CFISD Is Not Entitled to Summary Judgment on Roe's Claims
    for Nominal and Compensatory Damages for Loss of
    Educational Opportunities and Benefits</u>

Asserting "[t]he claim that Roe would have obtained a full athletic scholarship, simply because she participated in athletics as a freshman in high school, is too speculative and attenuated to survive summary judgment,"[35] CFISD argues that "[e]ven outside the context of Title IX, courts routinely reject assertions like Roe's because they are too speculative to justify relief."[36] The problem with this argument is that although the Gibbs Report contains an estimation of the current cost of a higher education without an athletic scholarship,[37] Roe is neither claiming that she would have obtained a full athletic scholarship nor seeking damages for loss of an athletic scholarship; Roe is seeking damages for loss of educational opportunities and benefits, and loss of past and future earnings and earning potential.[38] Although the lost educational opportunities and benefits for which Roe seeks damages include an opportunity to participate in high school athletics and compete for an athletic scholarship, in her motion to strike the designation and exclude the testimony of CFISD's Athletic Director, Virginia

---

[35]Defendant's MSJ, Docket Entry No. 96, p. 22.

[36]<u>Id.</u> at 23.

[37]Gibbs' Report, pp. 11-12, Docket Entry No. 97-10, pp. 14-15.

[38]Plaintiff's First Amended Complaint, Docket Entry No. 84, p. 17 ¶¶ 82-83; Plaintiff's Response to Defendant's MSJ, Docket Entry No. 98, pp. 13-18.

Flores, Roe argues that CFISD "offers this expert for no understandable purpose [because t]he general difficulty in obtaining an athletic scholarship is in no way relevant to [her] damage claims."[39]  Roe explains that she

> does not claim anywhere she _would_ have received a scholarship to play college sports if the assault had not occurred.  Roe does not claim anywhere she _would_ have even chosen to play college sports.  Roe has only ever claimed she missed out on the chance to continue her participation in athletics and the _opportunity_ to compete for a scholarship.[40]

Roe does not argue and her experts do not opine that she was likely to have obtained an athletic scholarship, and CFISD is not seeking summary judgment on Roe's claim for lost educational opportunities and benefits.  Quoting <u>Fairfax County School Board</u>, 2023 WL 424265, at *5, Roe asserts that "[l]ost educational opportunities lie at the heart of the Title IX private right of action cases."[41]  Citing <u>University of Mississippi</u>, 2024 WL 3011133, at *4-*5, and <u>McGowan</u>, 715 F. Supp. 3d at 954, Roe argues that "courts in the Fifth Circuit[] consistently recognize that compensatory damages arising from lost educational opportunities and benefits remain available for violations of Title IX [post-<u>Cummings</u>]."[42]  Quoting <u>Fairfax County School Board</u>, 2023 WL 424265,

---

[39]Plaintiff's Motion to Strike and Exclude Flores Testimony, Docket Entry No. 102, p. 5.

[40]<u>Id.</u>

[41]Plaintiff's Response to Defendant's MSJ, Docket Entry No. 98, p. 13.

[42]<u>Id.</u> at 14.

at *5, Roe argues that "compensatory damages that are not based on specific monetary harm but stem directly from lost opportunities suffered as a result of discrimination can nonetheless serve as a basis for damages in private right of action cases based on Spending Clause statutes."[43]

In <u>University of Mississippi</u>, 2024 WL 3011133, at *4, the court denied the defendant's motion for summary judgment on the plaintiff's claim for lost educational opportunities and benefits explaining that

> Title IX protects these very interests, so contract damages were foreseeable based on lost educational opportunities. And while <u>reasonable</u> certainty is required, juries routinely make equally difficult findings in other contexts, like quantifying monetary damages for sexual harassment under Title IX.

2024 WL 3011133, at *5. In <u>McGowan</u> the court observed that "[o]ther district courts have found that compensatory damages for loss of educational opportunities and benefits remain available for violations of Spending Clause statutes post-<u>Cummings</u>," 715 F. Supp. 3d at 955, and rejected the defendant's argument that "compensatory damages for loss of educational opportunities and benefits are precluded as a matter of law." <u>Id.</u> at 956. Courts in other circuits have reached similar conclusions. In support of its holding the <u>University of Mississippi</u> court quoted <u>Fairfax County School Board</u> for stating that

> [a]lthough it is true that principles of contract law place the burden on the plaintiff to prove damages with reasonable certainty, <u>Restatement (Second) of Contracts</u>

---

[43]<u>Id.</u> at 13.

§ 352 cmt. a (1981), compensatory damages that are not based upon specific monetary harm but stem directly from lost opportunities suffered as a result of discrimination can nonetheless serve as a basis for damages in private right of action cases based on Spending Clause statutes.

2024 WL 3011133, at *4 (quoting Fairfax County School Board, 2023 WL 424265, at *4). See also A.T. v. Oley Valley School District, No. 17-4983, 2023 WL 1453143 at *4 (E.D. Pa. February 1, 2023) (denying summary judgment on the plaintiff's Title IX claims for inter alia "lost opportunity"). Courts addressing claims brought under other statutes subject to the Spending Act post-Cummings have similarly held that plaintiffs may recover damages for lost opportunities. See Chaitram v. Penn Medicine-Princeton Medical Center, No. 21-17583 (MAS)(TJB), 2022 WL 16821692, at *2 (D.N.J. November 8, 2022) (holding in a case brought under the Rehabilitation Act and the ACA for inter alia "loss of opportunity" that "Cummings does not foreclose compensatory damages under an expectation-interest theory"); Montgomery v. District of Columbia, No. 18-1928 (JDB), 2022 WL 1618741 at *25 (D.D.C. May 23, 2022) (holding in a case brought under the Americans with Disabilities Act that "while [the plaintiff] cannot recover either emotional distress or reputation damages in light of Cummings, he may be able to recover some small amount of damages to compensate him for the opportunity he lost when he was denied the ability to meaningfully access and participate in his [police] interrogations").

On this record and in light of the Fifth Circuit's order of remand, whether CFISD deprived Roe of educational opportunities and

-17-

benefits, and if so, what — if any — amount of damages would compensate her for that loss are fact issues for the jury. <u>See Fairfax County School Board</u>, 2023 WL 424265, at *5 ("This Court finds that . . . loss[] of educational opportunities remain recoverable post-<u>Cummings</u> and that it would be premature at this time to preclude Plaintiff from presenting evidence related to compensatory damages for lost educational opportunities and benefits."). <u>See also</u> <u>id.</u> at n. 2 ("[A]t least one other court has instructed a jury [that] they may award [nominal or symbolic] damages where the actual damages 'have no monetary value.' . . . <u>Cf.</u> <u>Restatement (Second) of Contracts § 346(2) (Am. L. Inst. May 2022 Update)</u>(permitting award of nominal damages '[i]f the breach caused no loss or if the amount of the loss is not proved')."). Since, however, the allegations in Roe's First Amended Complaint list educational opportunities and benefits of CFISD high school students,[44] the Vannest Report elaborates on those educational opportunities and benefits,[45] and Roe asserts that she does not claim that she would have received a scholarship or that she would even have chosen to play college sports,[46] the educational opportunities and benefits at issue in this case are those afforded to CFISD high school students during the years that Roe would have

---

[44]Plaintiff's First Amended Complaint, Docket Entry No. 84, p. 17 ¶¶ 82-83.

[45]Vannest Report, pp. 9-13, Docket Entry No. 97-9, pp. 10-14.

[46]Plaintiff's Motion to Strike and Exclude Flores Testimony, Docket Entry No. 102, pp. 5-6.

attended had CFISD not allegedly responded to her assault with deliberate indifference.  The educational opportunities and benefits at issue in this case do not include loss of an athletic scholarship or consequences stemming therefrom.  Therefore, CFISD's request to bar expert testimony regarding Roe's loss of a potential athletic scholarship and the costs of a post-secondary education will be granted.

      2.    <u>CFISD Is Entitled to Summary Judgment on Roe's Damage Claims for Loss of Past and Future Earnings and Diminished Earning Capacity</u>

Citing the reports and expected testimony of Roe's experts, Gibbs and Roney, CFISD argues that "Roe's claim for loss of past and future earnings and diminished earning capacity are too speculative and attenuated to justify relief, and that Roe lacks evidence of but-for causation [for such damages]."[47] Relying primarily on <u>B.R.</u>, 718 F. Supp. 3d at 504, <u>University of Mississippi</u>, 2024 WL 3011133, and <u>Fairfax County School Board</u>, 2023 WL 424265, CFISD moves the court for summary judgment on these claims and asks the court to preclude Roe from presenting evidence or argument in support of recovery for these types of damages.[48]

---

[47]Defendant's MSJ, Docket Entry No. 96, p. 27.

[48]<u>Id.</u> at 27-30.

Asserting she "may recover damages that are consequences of or result from [her] lost educational opportunities and benefits,"[49] and citing the Gibbs and Roney reports Roe responds that

> [m]any of the outcomes Dr. Vannest describes are not susceptible to precise measurement and must necessarily be left to the jury's discretion. However, some of the consequences <u>are</u> measurable — at least to some ascertainable degree. Loss of earning capacity is one of those consequences.[50]

Citing Texas tort cases, Roe argues that "[l]ost earning capacity is an assessment of the plaintiff's capacity to earn a livelihood prior to injury and the extent to which the injury impaired that capacity."[51]  Roe argues that

> [b]uilding on Vannest's report, Gibbs provides potential earning streams based on several scenarios beginning with comparing Roe's earning capacity as a person who obtained a GED with a person who earned a high school diploma. He follows with earning capacity projections based [on] increasing levels of education stopping with an undergraduate degree. . . . Roney, an economist, provides the present value associated with each of the scenarios.[52]

Roe argues that

> [a] reasonable jury could conclude that had [she] not been deprived of the opportunities and benefits CFISD provided to other students, she would have graduated from

---

[49]Plaintiff's Response to Defendant's MSJ, Docket Entry No. 98, p. 19.

[50]<u>Id.</u>

[51]<u>Id.</u> at 20.

[52]<u>Id.</u> at 21 (citing Gibbs Report, pp. 11-12, Docket Entry No. 97-10, pp. 14-15, and Roney Report, pp. 6-8, Docket Entry No. 97-11, pp. 7-9).

high school and chosen any one of the alternative paths
Gibbs outlines.  It is within the province of the jury to
determine which path Roe would have been more likely to
choose and it is up to the jury to determine the amount
of damages using the expert's opinions as a guide.[53]

In B.R. the plaintiff brought a Title IX action alleging inter alia that a county school board responded with deliberate indifference to reports that she had been sexually assaulted, harassed, threatened, and bullied during her seventh grade year. The plaintiff sought a variety of damages, including for lost future earnings and earning capacity, and for past and future educational expenses.  718 F. Supp. 3d at 507.  One of the plaintiff's experts opined that she was totally incapable of working, and based on her receipt of a law-related internship, id. at 516, they opined that but for the defendant's actions "she would have gone after college to obtain a professional degree and . . . 'thrived as a physician or attorney.'"  Id. at 509.  The school board moved for summary judgment arguing that the plaintiff's claim for lost future earnings and earning capacity was barred by Cummings, 142 S. Ct. at 1562, because her generalized claims for lost earnings were too speculative and attenuated to constitute traditional contract damages.  B.R., 718 F. Supp. 3d at 515-16. The court granted the school board's motion explaining that "consequential damages relating to lost economic opportunities are not recoverable simply because a plaintiff specifies an

---

[53]Id. at 24.

aspirational position, as they must have been anticipated or contemplated at the time of contracting." Id. at 516. In response to B.R.'s argument that the court's rejection of her experts' opinions would immunize school officials from the consequences of life-altering injuries based on a student's age when Title IX violations occur, the court cited Justice Breyer's dissent in Cummings, 142 S. Ct. at 1582, for having observed that the majority opinion would mean that students who suffer discrimination at school may be denied remedies. The court remained unpersuaded that Cummings did not apply or that traditional contract principles would enable B.R. to recover the generalized and speculative damages that she sought for her alleged lost earnings capacity. B.R., 718 F. Supp. 3d at 516.

In University of Mississippi a college sophomore suspended for sexual misconduct filed a Title IX action seeking inter alia damages for lost opportunities to graduate from college and earn a professional salary. 2024 WL 3011133, at *1. Based on the plaintiff's deposition testimony that when he was suspended he was "thinking about whether or not [he] wanted to go to law school," id. at *7, his expert calculated damages based on average salaries for lawyers in Nashville, Tennessee. Id. Holding that the plaintiff's "thinking" about attending law school did not provide a sufficient foundation for the expert's damage calculation, the court excluded that testimony. Id. The court explained that

> "thinking" about being a lawyer early in your college
> career and having good grades in high school is not
> enough to create a trible fact.    Nothing beyond
> speculation suggests that [the plaintiff] would have
> applied for law school, been admitted, graduated, passed
> the bar, and then found a job practicing law in
> Nashville.

Id.    The court also excluded expert testimony that had the

plaintiff graduated from college he would have earned $80,000.00

per year for the first two years and $120,000.00 per year

thereafter as unsupported by any facts in evidence.    Id. at *8.

In Fairfax County School Board the plaintiff brought Title IX

claims against school administrators alleging that they had acted

with deliberate indifference in response to reports that she had

been sexually harassed by another student.  2023 WL 424265, at *1.

The plaintiff sought damages for inter alia "lost future earnings

and earning capacity."    Id. at *4.  The court granted the

defendant's motion in limine to preclude the plaintiff from

presenting evidence or argument for recovering damages for

diminished earning capacity and lost employment opportunities.  Id.

at *7.  The court explained that the plaintiff's

> amended complaint inadequately pleads any loss of
> identifiable professional opportunities, and Plaintiff
> cannot cure this now by presenting evidence or expert
> testimony that Plaintiff has since experienced general
> difficulty obtaining employment or has generally earned
> less than she would have absent Defendant's alleged Title
> IX violations.

Id.  at *6.  The court based its ruling an the Fourth Circuit's

holding in Rice v. Community Health Association, 203 F.3d 283, 289

(4th Cir. 2000), that plaintiffs in breach of contract actions seeking consequential harm to their profession career must plead and prove the loss of "'future identifiable professional opportunities that would have been available to [them] absent the breach' and that were in contemplation of the parties at the time of their contract." Fairfax County School Board, 2023 WL 424265, at *6 (quoting Rice, 203 F.3d at 289).

Quoting B.R., 718 F. Supp. 3d at 516, Roe argues that "[t]hese cases stand for a simple proposition: 'Consequential damages relating to lost economic opportunities are not recoverable simply because a plaintiff specifies an aspirational position, as they must have been anticipated or contemplated at the time of contracting.'" Roe argues that her damage experts

> do not base their calculations of her diminished earning capacity on some "aspirational" position or cursory curiosity. Rather, the calculations are firmly grounded in the loss of educational opportunities and benefits as defined by Dr. Vannest and by CFISD itself in its policies and on its website. The calculations are based on outcomes that were undeniably "anticipated or contemplated" by both Roe and, at least based on its representations to students and parents, CFISD. Roe and CFISD anticipated that Roe would graduate from high school. Based on the programming offered to CFISD students, Roe anticipated that she would graduate career and/or college-ready and CFISD contemplated that its students would seek vocational training or higher education.[54]

Apart from educational opportunities and benefits offered to CFISD high school students, Roe's First Amended Complaint contains

---

[54]Id. at 22-23.

no allegations of identifiable future educational or employment opportunities that would have been available to her absent CFISD's alleged Title IX violations.  Instead, she only generally alleges that "[t]he deprivation of educational opportunities and benefits [that she] suffered caused her economic loss, including but not limited to costs associated with remedial education, loss of earnings and diminished earning capacity."[55]  Neither these allegations nor the evidence provided by Roe's experts are sufficient to support a claim for loss of past and future earnings and earning capacity based on speculation that Roe might have received an athletic scholarship, attended college, and attained a college degree.

Roe argues that "[t]he record contains evidence that [she] contemplated college both before and after her Title IX injury,"[56] but she cites only evidence that her grandparents, with whom she lived, were Texas certified teachers,[57] that her grandfather worked with her on her softball skills and discussed with her the possibility of earning an athletic scholarship to attend college,[58]

---

[55]Plaintiff's First Amended Complaint, Docket Entry No. 84, p. 17 ¶ 83.

[56]Plaintiff's Response to Defendant's MSJ, Docket Entry No. 98, p. 23.

[57]Id. (citing Declaration of Judy Welch, Docket Entry No. 42-3, p. 2 ¶ 4).

[58]Id. (citing Declaration of Gale Welch, Docket Entry No. 42-4, pp. 2-4 ¶¶ 3, 5, and 14).

and that when asked about damages in her deposition, she answered:
"I want to be able to recover enough to . . . further my education
in college."[59] Based on this evidence a reasonable jury could not
find that before Roe suffered her alleged injury her contemplation
of attending college or earning an athletic scholarship was
anything more than an aspirational position or that but for CFISD's
alleged Title IX violation she was likely to have received an
athletic scholarship or pursued a college education.  The court
concludes therefore that CFISD is entitled to summary judgment on
Roe's claims for the current cost of attending college based on her
failure to receive an athletic scholarship, and for her alleged
loss of past and future earnings and earnings capacity based on her
failure to receive a college degree as too remote, speculative, and
conjectural to support recovery.  See University of Mississippi,
2024 WL 3011133, at *7; B.R., 718 F. Supp. 3d at 516.  See also CQ,
Inc. v. TXU Mining Co., L.P., 565 F.3d 268, 278 (5th Cir. 2009)
("The universal rule for measuring damages for the breach of a
contract is just compensation for the loss or damage actually
sustained . . . A party may not recover damages for breach of
contract if those damages are remote, contingent, speculative or
conjectural.").

---

[59]Id. (citing Oral Deposition of [Jane Roe], Exhibit E to
Plaintiff's Response to Defendant's MSJ, p. 124:22-24, Docket Entry
No. 99, p. 77).

-26-

Whether CFISD is entitled to summary judgment on Roe's claim for loss of past and future earnings and earning capacity based on her failure to receive a high school diploma similarly turns on Roe's failure to submit supporting evidence sufficient to create a genuine issue of material fact for trial.  Quoting the Vannest Report for stating that she "did not just 'drop' out of Cypress Creek High School, CFISD 'pushed' her out,"[60] Roe argues that "[a] reasonable jury could conclude that had Roe not been deprived of the opportunities and benefits CFISD provided to other students, she would have graduated from high school and chosen any one of the alternative paths Gibbs outlines."[61]  But missing from the summary judgment record is any evidence from which a reasonable jury could find that but for CFISD's alleged deliberately indifferent response to Roe's assault, she "would have followed the example of her parents and earned a high school diploma.  She would have made a transition to [the] labor force, earning an income commensurate with her educational level."[62]  The evidence demonstrates that Roe's academic and behavioral struggles predate not only CFISD's alleged post-assault deliberate indifference, but also her transfer to CFISD, and the alleged assault, which occurred in March of 2014. For example:

---

[60]Id. at 19 (citing Vannest Report, pp. 11-12, Docket Entry No. 97-9, pp. 12-13).

[61]Id. at 24.

[62]Gibbs' Report, p. 11, Docket Entry No. 97-10, p. 14.

-27-

- Roe (while attending a different school district) failed Language Arts, Reading, Math and World Culture the first semester of her sixth grade year. [Exhibits A-B].[63]

- Roe failed Math the first semester of her eighth grade year. [Exhibit C].[64]

- Roe scored "unsatisfactory" on most of the standardized tests that she took during her eighth grade year. [Exhibit D].[65]

- Roe failed Math, Science, and U.S. History the second semester of her eighth grade year. [Exhibit E].[66]

- Roe failed Biology I and English I the first semester of her ninth grade year. [Exhibit F].[67]

- In seventh grade, Roe was disciplined <u>seventeen</u> times, including for excessive talking, acting out, being disruptive, vandalism/criminal mischief on school property, cursing, shouting, refusing to work, and other nuisance behavior. [Exhibit G].[68]

- In eighth grade, Roe was disciplined <u>twenty-nine</u> times, including for refusing to work, excessive taking, acting out, skipping class, inappropriate language/gestures, and other nuisance behavior. [Exhibit G].[69]

---

[63]Defendant's MSJ, Docket Entry No. 96, p. 17 (citing Roe's school record, Exhibits A and B to Defendant's MSJ, Docket Entry Nos. 97-1, p. 2, and 97-2, pp. 2-3).

[64]<u>Id.</u> (citing Roe's school record, Exhibit C to Defendant' MSJ, Docket Entry No. 97-3, p. 2).

[65]<u>Id.</u> (citing Roe's school record, Exhibit D to Defendant' MSJ, Docket Entry No. 97-4, p. 2).

[66]<u>Id.</u> (citing Roe's school record, Exhibit E to Defendant' MSJ, Docket Entry No. 97-5, p. 2).

[67]<u>Id.</u> (citing Roe's school record, Exhibit F to Defendant' MSJ, Docket Entry No. 97-6, p. 2).

[68]<u>Id.</u> (citing Roe's school record, Exhibit G to Defendant' MSJ, Docket Entry No. 97-7, p. 3).

[69]<u>Id.</u> (citing Roe's school record, Exhibit G to Defendant' MSJ, Docket Entry Nos. 97-7, pp. 2-3).

Without disputing that her pre-assault academic record was poor, Roe argues that "[t]he gist of CFISD's argument seems to be that since [she] was not a historically high-achieving student in the first place, . . . [she] was <u>anticipated</u> to fail and CFISD <u>contemplated</u> her dropping out."[70]  But Roe fails to cite any evidence from which a reasonable jury could find that but for CFISD's alleged response to her assault, she would have graduated from high school, entered the workforce, and earned more than she has been able to earn with a GED.  While Roe offers Gibbs' comparison of the earning capacity of a person who obtains a GED to that of a person who earns a high school diploma,[71] and based on that comparison Roney opines that "[t]he present value of [Roe's] past and future loss of earnings is $120,461.00,"[72] Gibbs and Roney both attribute Roe's failure to obtain a high school diploma to the assault she suffered in March of 2014, not to CFISD's response to that assault.[73]  Moreover, Roe fails to cite evidence of any specific employment opportunity that she lost because she has a GED and not a high school diploma.  Roe bears the burden of responding

---

[70]Plaintiff's Response to Defendant's MSJ, Docket Entry No. 98, p. 16.

[71]Gibbs Report, p. 11, Docket Entry No. 97-10, p. 14.

[72]Roney Report, p. 8, Docket Entry No. 97-11, p. 9.

[73]<u>See</u> Gibbs Report, p. 11, Docket Entry No. 97-10, p. 14 ("envision[ing] two scenarios for how Roe's future would have unfolded, had the assault never occurred"); Roney Report, p. 2, Docket Entry No. 97-11, p. 3 ("This report assesses the economic loss to [Jane Roe] and arising from her injury on March 10, 2014.").

to CFISD's motion with evidence showing with reasonable certainty that she suffered the claimed loss of past and future earnings and earning capacity. Roe's speculation that but for CFISD's response to her assault she would have graduated with a high school diploma, and the expert reports premised on that speculation, fail to create a genuine issue of material fact for trial. Nor does Roe cite any evidence from which a reasonable jury could conclude that when CFISD accepted federal funding it contemplated being held liable for the diminished earning capacity of a student who suffers discrimination in violation of Title IX and then fails to obtain a high school diploma. See Cummings, 142 S. Ct. at 1571.

The court concludes therefore that CFISD is entitled to summary judgment on Roe's claims for loss of past and future earnings and earnings capacity based on her failure to receive a high school diploma as too speculative and conjectural to support recovery. See University of Mississippi, 2024 WL 3011133, at *7; B.R., 718 F. Supp. 3d at 516; CQ, 565 F.3d at 278. Alternatively, the court concludes that CFISD is entitled to summary judgment on Roe's claims for loss of past and future earnings and earning capacity because she fails to cite any evidence capable of establishing that when CFISD accepted federal funding it contemplated being held liable for the diminished earning capacity of a student who suffers discrimination in violation of Title IX and then fails to obtain a high school diploma. See Cummings, 142 S. Ct. at 1571.

-30-

### III. <u>Motions to Strike and Exclude</u>

Citing Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 113 S. Ct. 2786 (1993),[74] CFISD seeks to strike as too speculative and attenuated to go to trial, expert opinions relating to Roe's "hypothetical ability to obtain an athletic scholarship,"[75] "costs of higher education,"[76] and "diminished earning capacity."[77] Citing the same legal authority, Roe moves to exclude or limit the opinion testimony of CFISD's, retained expert, Mia M. Martin ("Martin"),[78] and CFISD's non-retained expert, Virginia V. Flores ("Flores").[79]

### A. **Applicable Law**

Federal Rule of Evidence 702 allows expert testimony to be admitted that assists the trier of fact to understand the evidence or determine a fact in issue. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent

---

[74]Defendant's MSJ, Docket Entry No. 96, pp. 9-10.

[75]<u>Id.</u> at 25.

[76]<u>Id.</u> at 27.

[77]<u>Id.</u> at 30.

[78]Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 100.

[79]Plaintiff's Motion to Strike and Exclude Flores Testimony, Docket Entry No. 102.

demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

When asked to do so, a district court must make a preliminary determination as to whether the requirements of Rule 702 are satisfied with respect to a particular expert's proposed testimony. See Daubert, 113 S. Ct. at 2796 (citing Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, . . . or evidence is admissible."). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 119 S. Ct. 1167, 1176 (1999). To be qualified an expert "witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004), cert. denied, 126 S. Ct. 1022 (2006). To be

relevant the reasoning or methodology underlying the expert's testimony must be applicable to the facts in issue. See Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 668 (5th Cir. 1999). To be reliable the reasoning or methodology underlying the expert's testimony "must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief." Id. (citing Daubert, 113 S. Ct. at 2795-96). The Daubert analysis "does not judge the expert's conclusions themselves." Guy v. Crown Equipment Corp., 394 F.3d 320, 325 (5th Cir. 2004).

If a party retains an expert to provide testimony in anticipation of litigation (a retained testifying expert), the party must provide a written report that includes the information specified in Federal Rule of Civil Procedure 26(a)(2)(B). If the party does not retain the expert in anticipation of litigation (a non-retained expert), the party need only provide a disclosure stating the information specified in Federal Rule of Civil Procedure 26(a)(2)(C).

**B.    Analysis**

1.    CFISD's Request to Strike Roe's Expert Witness Testimony

Roe designated three experts on damages: Vannest; Gibbs; and Roney.[80]    These experts are expected to testify regarding issues

---

[80]See Plaintiff's Expert Disclosures, pp. 1-3, Exhibit A to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket
(continued...)

related to Roe's damages for loss of educational opportunities and benefits and for loss of past and future earnings and earning capacity.[81]  CFISD argues that expert testimony relating to Roe's "hypothetical ability to obtain an athletic scholarship," "costs of higher education," and "diminished earning capacity," should be stricken and excluded because it would be highly speculative and too attenuated to justify relief.[82]  Because for the reasons stated in § II.C.1, above, the court has already concluded that the alleged loss of educational opportunities and benefits at issue in this case do not include loss of an athletic scholarship or consequences stemming therefrom, including the cost of a college education, and because for the reasons stated in § II.C.2, above, the court has found that CFISD is entitled to summary judgment on Roe's claims for loss of past and future earnings and earning capacity, CFISD's request to strike the testimony of Roe's experts in support of these claims will be granted as not needed to help the jury decide any fact at issue.

---

[80](...continued)
Entry No. 101, pp. 3-5.

[81]<u>Id.</u>

[82]Defendant's MSJ, Docket Entry No. 96, pp. 25-30.

-34-

2.  <u>Roe's Motions to Strike and Exclude</u>

On September 30, 2024, CFISD designated retained expert, Martin, an attorney, and non-retained expert, Flores, CFISD's current athletic director and former girl's basketball coach at Cypress-Woods High School.[83]  Roe moves to strike the designations and exclude the testimony of both of these experts (Docket Entry Nos. 100 and 102).

(a)  Flores

CFISD designated Flores as a non-retained expert witness to provide testimony regarding "the likelihood of any female high school athlete going to play at the college level," and "the likelihood of any female high school athlete getting a scholarship in any amount to play at the college level."[84]  Because for the reasons stated in § II.C.1, above, the court has already concluded that the alleged loss of educational opportunities and benefits at issue in this case do not include loss of an athletic scholarship or consequences stemming therefrom, including the cost of a college education, Roe's motion to strike the designation of non-retained expert Flores and to exclude her testimony will be granted as not needed to help the jury decide any fact at issue.

---

[83]Defendant's Certification of Expert Witnesses, Docket Entry No. 95.

[84]Defendant's Designation of Expert Witnesses, p. 2, Exhibit B to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 101, p. 9.

(b)  Martin

CFISD designated Martin as an expert

expected to testify regarding issues relating to
Plaintiff's past, present and/or future damages related
to the alleged loss of educational opportunities and
benefits she suffered as a result of what Plaintiff
alleges to be deliberate indifference on the part of
Defendant [CFISD]. Her report is attached . . .[85]

Seeking to strike Martin's expert designation and exclude her

report and testimony, Roe argues that CFISD has flouted the court's

orders by designating a purported liability expert not a damages

expert,[86] and that her testimony is inadmissible under Federal Rule

of Evidence 702 because she is not qualified as an expert on Title

IX damages, her testimony is neither relevant nor reliable and

usurps the role of the court and the province of the jury, and her

report fails to apply reliable methodology.[87] CFISD responds that

Martin's designation does not violate the court's orders regarding

new experts because she is a damages expert in the same way that

Vannest is a damages expert,[88] and that Martin is a proper expert

witness under Rule 702.[89]

---

[85]Id. at 1, Docket Entry No. 101, p. 8.

[86]Plaintiff's Motion to Strike and Exclude Martin Testimony,
Docket Entry No. 100, pp. 8-10.

[87]Id. at 10-20.

[88]Defendant's Response to Plaintiff Jane Roe's Motion to Strike
Expert Designation and Exclude Testimony of Mia M. Martin and
Request for Sanctions ("Defendant's Response to Plaintiff's Motion
to Strike and Exclude Martin Testimony"), Docket Entry No. 104,
pp. 4-7.

[89]Id. at 10-17.

## (1) CFISD Improperly Designated Martin as a Damages Expert

Asserting that "although CFISD disingenuously designated Martin as a **damages** expert, CFISD actually retained Martin to testify as a **liability** expert," and that the "Court reopened discovery _only_ for the purposes of designating damages experts," Roe argues that "[f]or this reason alone, the Court should strike Martin's report and exclude her testimony as a witness."[90]  Roe's argument that Martin was retained as a liability as opposed to a damages expert is supported by the paragraph in Martin's report labeled "Expert Assignment," which says that

> Counsel for Defendant, [CFISD], Thompson and Horton, LLP, retained me to render an opinion whether CFISD, through its appropriate administrators and other employees, was deliberately indifferent in its response to known information concerning alleged discrimination, harassment, and retaliation after the alleged sexual assault of Plaintiff Jane Roe . . . on or about March 14, 2014, while she was a student at CFISD's Cypress Creek High School . . .

> As explained in more detail below, based on my review, research, and analysis and my years of professional experience, it is my opinion that CFISD acted in a reasonable manner in response to known information concerning Roe and it was not deliberately indifferent in its dealing with Roe.[91]

CFISD responds that "Martin's designation does not violate the Court's order regarding new experts, because . . . Martin is a damages expert in the same way that . . . Vannest is a damages

---

[90]Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 100, p. 10.

[91]Expert Report Mia M. Martin ("Martin Report"), p. 2, Exhibit C to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 101, p. 14.

expert."[92]   Asserting that liability and damages are "inextricably intertwined,"[93] CFISD argues that "Martin's purpose is to rebut many of the factual conclusions drawn by Dr. Vannest, which Roe will presumably rely on to argue to the jury that the District was deliberately indifferent to her sexual assault."[94]  CFISD then cites several ways in which Martin's report rebuts Vannest's conclusions. For example, citing Vannest's opinion that "CFISD did not follow [its] own discipline and complaint policies, depriving Ms. Roe of the opportunity to participate in the district's complaint process or otherwise be heard,"[95] CFISD argues Martin opines that "[p]arents and students also bear responsibility for making themselves aware of general expectations and information as included in the Student Handbook and Student Code of Conduct."[96]  Other examples of issues on which CFISD argues Vannest opines and Martin counters include reasons for the post-assault drop in Roe's grades and her withdrawal from school athletics, and CFISD's failure to offer Roe certain programs and services following the assault.[97]  Regarding the latter, Martin opines that

---

[92]Defendant's Response to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 104, p. 4.

[93]Id.

[94]Id. at 14.

[95]Id. at 7 (quoting Vannest Report, p. 11, Docket Entry No. 97-9, p. 12).

[96]Id. at 8 (quoting Martin Report, p. 10, Docket Entry No. 101, p. 22).

[97]Id. at 7-10.

> Plaintiff's expert points to various programs that CFISD failed to offer Doe. [sic] CFISD offered her the same programs and services available to other students. The District did not refuse to allow Roe to participate in any academic program she requested. Even if the District could have offered her other programs that might have maximized her educational experience at CFISD, that possibility is not relevant to Plaintiff's claims of unlawful conduct.[98]

Roe's First Amended Complaint seeks damages for the loss of educational opportunities and benefits that she alleges she suffered because of CFISD's <u>deliberately</u> indifferent response to the sexual assault she suffered while a student at a CFISD high school. Roe retained Vannest, an educational expert, to help the jury understand the types of educational opportunities and benefits available to high school students in Texas in general and in CFISD in particular, and "to explain the impact on students who are deprived of these opportunities and benefits."[99] In response, CFISD retained Martin, a school law attorney, who acknowledges that she was retained to render an opinion as to whether CFISD responded to Roe's assault with deliberate indifference, and who offers an opinion on the ultimate issue of liability, i.e., "that CFISD acted in a reasonable manner in response to known information concerning Roe and it was not deliberately indifferent in dealing with Roe."[100] The fact that Martin's report counters opinions offered in

---

[98]Martin Report, pp. 13-14, Docket Entry No. 101, pp. 25-26.

[99]Vannest Report, p. 3, Docket Entry No. 97-9, p. 4.

[100]Martin Report, p. 2, Docket Entry No. 101, p. 14.

Vannest's report does not overcome the fact that unlike Vannest's report, Martin's report does not address the types of educational opportunities and benefits available to high school students in Texas in general and in CFISD in particular, or the impact on students who are deprived of these opportunities and benefits. Instead, Martin merely opines that Roe is not entitled to damages because CFISD was not deliberately indifferent. Because whether CFISD responded to Roe's assault with deliberate indifference is the ultimate issue of liability, CFISD improperly designated Martin as a damages expert.

### (2)  Martin's Testimony Is Inadmissible

Martin is a professional consultant who served as General Counsel for Richardson Independent School District for 21 years.[101] Roe argues that Martin is unqualified to serve as an expert witness on damages in this case because she has no demonstrated Title IX expertise, i.e., "no relevant specialized training or experience, no list of publications, no participation in any relevant professional associations."[102] Asserting that Martin's testimony is neither relevant nor reliable, Roe argues that it is inadmissible under Federal Rules of Evidence 702 and 704 because instead of

---

[101]Id.

[102]Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 100, p. 12.

offering opinions that would assist the jury to understand the evidence or to determine a fact in issue,

> [s]he concludes repeatedly that CFISD's response to Roe's sexual assault was "reasonable" [and that] . . . "[e]ven if its response was not perfect, **it was not deliberately indifferent** and did not subject Plaintiff to harassment or retaliation." . . . From open to close, Martin's "expert report" is nothing more than a legal brief advancing argument disguised as opinion.[103]

Asserting that "[w]hether CFISD's actions were 'reasonable' is the central question in this case the jury must decide,"[104] Roe argues that "[n]either party may retain an expert to tell the jury how to answer that question."[105] Asserting that "Martin makes no effort to establish that she has applied <u>any</u> reliable methodology or specific recognized educational basis in reaching her conclusions," Roe argues that Martin "fails to establish any purported standard of care" and "provides no rationale for how she concludes, in a way superior to a layman, that CFISD's actions did not amount to deliberate indifference."[106]

Acknowledging that Martin "does occasionally reach conclusions that Dr. Vannest's factual findings . . . failed to . . . rise to

---

[103]<u>Id.</u> at 17.

[104]<u>Id.</u> at 19 (citing <u>Roe</u>, 53 F.4th at 346-48).

[105]<u>Id.</u>

[106]<u>Id.</u> at 20.

the level of deliberate indifference under Title IX,"[107] CFISD argues that

> is not grounds to strike her report, or her status as an expert witness in this case, altogether. At most, these are issues that can be addressed during or prior to her testimony during trial. Striking her as a witness altogether is an excessive remedy for what is at worst a very mild problem with her report.[108]

Relying primarily on Doe v. Wharton Independent School District, 2017 WL 932935 (S.D. Tex. 2017), and Roohbakhsh v. Board of Trustees of Nebraska State Colleges, 2019 WL 5653448 (D. Neb. 2019), CFISD argues that "courts have . . . decided that there are roles for even attorneys to play as experts in Title IX cases."[109]

In Wharton the court held that competing Title IX experts would not be allowed to express opinions regarding the ultimate fact question of whether the defendant school district responded with deliberate indifference to the plaintiff's reports of a teacher's sexual harassment and assaults, 2017 WL 932935, at *1, but would be allowed to testify "as to their respective standards of care for implementing Title IX and anti-discrimination policies." Id. at * 2. In Roohbakhsh the court similarly allowed competing Title IX experts to testify as to the statute's history and purpose and as to industry standards of implementation, but

---

[107]Defendant's Response to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 104, p. 12.

[108]Id.

[109]Id.

barred them from testifying as to the ultimate fact issues, explaining that "[w]hether the College was 'deliberately indifferent' to the risk of harm to [the plaintiff] is beyond the proper role of expert witness and would supplant the jury's role in evaluating and determining the facts." 2019 WL 5653448, at * 4. Missing from CFISD's response is a cite to any parts of Martin's report addressing Title IX's history and purpose, industry standards, or applicable standards of care. Moreover, even if Martin's report did address these issues, they are issues of liability, not damages. By arguing that liability and damages are "inextricably intertwined,"[110] and that "Martin's purpose is to rebut many of the factual conclusions drawn by Dr. Vannest, which Roe will presumably rely on to argue to the jury that the District was deliberately indifferent to her sexual assault,"[111] CFISD essentially admits that Martin's report and testimony relate to liability, not damages. But as Roe points out, "[t]he deadline for designating liability experts has long passed."[112]

Because in her report Martin clearly states that she was retained to render an opinion as to whether CFISD responded to Roe's sexual assault with deliberate indifference, because the

---

[110]Id. at 4.

[111]Id. at 14.

[112]Plaintiff Jane Roe's Reply to Defendant's Response to Motion to Strike Expert Designation and Exclude Testimony of Mia M. Martin and Request for Sanctions, Docket Entry No. 106, p. 7 (citing Docket Entry No. 28, setting a deadlines of December 20, 2019, for Plaintiff's experts and January 31, 2020 for Defendant's experts).

conclusion expressed in Martin's report is that CFISD acted in a reasonable manner and was not deliberately indifferent in response to Roe's assault,[113] and because CFISD fails to point the court to opinions in Martin's report that would assist the jury to understand the types of educational opportunities and benefits available to high school students in Texas in general and in CFISD in particular, or to explain the impact on students who are deprived of these opportunities and benefits, the court concludes that even if Martin is qualified to testify as a Title IX expert, her testimony is inadmissible because it would usurp the role of the court and the province of the jury. Therefore, Roe's motion to strike Martin's designation and exclude her report and testimony will be granted.

## IV. Roe's Motion for Sanctions

Roe seeks attorneys fees and expenses incurred in connection with filing her motion to strike and exclude Martin's designation and testimony under Federal Rule of Civil Procedure 16(f)(2) for failure to obey a scheduling or pretrial order,[114] under 28 U.S.C. § 1927 for multiplying proceedings unreasonably and vexatiously,[115] and under the court's "inherent power 'to manage [its] own affairs

---

[113]Martin Report, p. 2, Docket Entry No. 101, p. 14.

[114]Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 100, p. 21.

[115]Id. at 21-22.

so as to achieve the orderly and expeditious disposition of cases.'"[116] In support of this motion Roe recounts the post-remand procedural history of the case arguing that CFISD caused unnecessary delay, burdened her, and wasted the court's time by opposing her motion for leave to amend her complaint to clarify that she seeks more than emotional distress damages that were disallowed by the Supreme Court in Cummings, 142 S. Ct. at 1576, by seeking an extension of time to designate damages experts, and ultimately designating as a damages expert an attorney retained as a liability expert.[117]  CFISD responds that sanctions are not warranted under any theory because none of its actions are sanctionable.[118]  Although after careful consideration of Martin's report, the applicable law, and the parties' arguments, the court has concluded that Martin's designation as a damages expert should be stricken and her report and testimony excluded as inadmissible, the court is not persuaded that sanctions are warranted.

Rule 16(f)(2) allows courts to impose sanctions in the form of fees and costs "incurred because of any noncompliance with this rule."  Although the court has concluded that Martin's designation should be stricken and her testimony excluded because her opinions relate to liability not damages, sanctions are not warranted under Rule 16(f)(2) because CFISD designated Martin as a damages expert

---

[116]Id. at 22.

[117]Id. at 23-26.

[118]Defendant's Response to Plaintiff's Motion to Strike and Exclude Martin Testimony, Docket Entry No. 104, pp. 14-17.

in compliance with the court's order extending the time for designating damages experts.

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Because

> sanctions under § 1927 must be predicated on actions that are both "unreasonable" and "vexatious." . . . [there must] be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. . .
>
> Because of the punitive nature of § 1927 sanctions, and in order not to chill legitimate advocacy, the provision must be strictly construed. . .

Edwards v. General Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998) (internal citations omitted).  In Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2131-38 (1991), the Supreme Court upheld the imposition of sanctions in the form of attorneys' fees and associated costs pursuant to the court's inherent powers against a litigant who had repeatedly engaged in bad-faith conduct.  The Court held that when sanctions under applicable rules and statutes are inadequate, a court may call upon its inherent powers to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  111 S. Ct. at 2133 (internal citations omitted).  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  Id. at 2132. Sanctions are not warranted under 28 U.S.C. § 1927 or the court's inherent powers because the court is not persuaded that

CFISD's designation of Martin was frivolous or made in bad faith, with improper motive, or reckless disregard of the duty owed to the court.  Nor is the court persuaded that Martin's designation unreasonably and vexatiously multiplied these proceedings. Therefore, Roe's motion for sanctions will be denied.

## V.  Conclusions and Order

For the reasons stated in § II.C.1, above, CFISD's motion for summary judgment is **DENIED** with respect to Roe's claims for loss of educational opportunities and benefits afforded to CFISD high school students during the years that Roe would have attended a CFISD high school but for CFISD's alleged deliberately indifferent response to her sexual assault.  For the reasons stated in § II.C.2, above, CFISD's motion for summary judgment is **GRANTED** with respect to Roe's claims for loss of past and future earnings and earning capacity and for the cost of higher education.  For the reasons stated in § III.B.1, above, CFISD's request to strike the testimony of Roe's expert witnesses is **GRANTED** with respect to Roe's claims for loss of past and future earnings and earning capacity and for the cost of higher education, and **DENIED** with respect to Roe's claims for loss of educational opportunities and benefits.  Defendant's Motion for Summary Judgment on Damages, which includes CFISD's request to strike the testimony of Roe's expert witnesses, Docket Entry No. 96, is therefore **GRANTED in PART and DENIED in PART.**

For the reasons stated in § III.B.2(a), above, Plaintiff Jane Roe's Motion to Strike Expert Designation and Exclude Testimony of Virginia V. Flores, Docket Entry No. 102, is **GRANTED**.

For the reasons stated in § III.B.2(b), above, Plaintiff Jane Roe's Motion to Strike Expert Designation and Exclude Testimony of Mia M. Martin is **GRANTED**.  For the reasons stated in § IV, above, Plaintiff Jane Roe's Request for Sanctions is **DENIED**.  Plaintiff Jane Roe's Motion to Strike Expert Designation and Exclude Testimony of Mia M. Martin and Request for Sanctions, Docket Entry No. 100, is therefore **GRANTED in PART and DENIED in PART**.

This case will be controlled by the following schedule.

The **JOINT PRETRIAL ORDER** shall be filed by July 3, 2025. Plaintiff is responsible for timely filing of the complete joint pretrial order.  No motions in limine will be allowed.  The parties may discuss potential evidentiary issues in pretrial memoranda filed with the Joint Pretrial Order.

DOCKET CALL will be held on July 11, 2025, at 2:30 p.m.  No instrument filed within three days of Docket Call will be considered.  All issues may be ruled on at Docket Call, and the case will be set for trial if a complete joint pretrial order has been filed.

**SIGNED** at Houston, Texas, on this the 13th day of June, 2025.

_____
                SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-48-